# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WILLIAM DALE MACLEOD,            )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        Civil Action No. 1:15-cv-01792-KBJ
                                 )
DEPARTMENT OF HOMELAND           )
SECURITY, *et al.*,              )
                                 )
            Defendant.           )
                                 )

## DECLARATION OF TRAVIS S. LEWIS

Pursuant to 28 U.S.C. § 1746, I, Travis S. Lewis, declare and state as follows:

1.      I am the Director of the Freedom of Information Act Division of the United States

General Services Administration ("GSA"). In this capacity, I am the agency official

immediately responsible for responding to requests for records under the Freedom of Information

Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other

applicable records provisions. I have been employed by the agency in this capacity since

February 2013. Prior to assuming this role, I served as a Senior Management Analyst with

GSA's GAO/OIG Audit Response Division. I make the following statements based upon my

personal knowledge, which in turn is based upon information furnished to me in the course of

my official duties. I am familiar with the efforts of Agency personnel to locate William Dale

MacLeod's alleged FOIA request, and I am in charge of coordinating the agency's search and

review efforts with respect to this alleged request.

2.   The core responsibilities of the GSA FOIA Division include:  responding to records

access requests made by the public (under the FOIA) and the Records Management duties associated with administering the FOIA in compliance with 41 C.F.R. Part 105-60. The GSA FOIA Division maintains in a computerized database a record of all FOIA requests filed with the GSA. Each FOIA request is logged in the system and assigned an identifying number [i.e. GSA-2016-000001). As a consequence, if a FOIA request has been filed with GSA, a record of that filing would be maintained in the database. This database, known as the FOIAonline is searchable by name of requester, date of request, phone number, email, requester's organization and topic of request.

3.  Plaintiff's Complaint, filed October 20, 2015, alleges only that "plaintiff requested information from the United States Department of General Services and received a response claiming they do not have the information requested." Compl. ¶ 6. The Complaint contains no additional information about any requests for documents Plaintiff contends that he submitted to the Agency. The Complaint also names a governmental entity ("United States Department of General Services") that does not exist.

4. On November 10, 2015 and December 2, 2015, I caused a search of the FOIAonline System to be conducted using the search terms "MacLeod," "William MacLeod," and "William Dale MacLeod". The system contained no record of a FOIA request made by "William MacLeod" or "William Dale MacLeod". Accordingly, the GSA has no record of William Dale MacLeod making a FOIA request of the Agency.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. §
1746.

Executed this 10th day of December 2015, Washington, D.C.

_____
Travis S. Lewis

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM DALE MACLEOD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No.: 1:15-cv-1792 |
| ) | Judge Ketanji Brown Jackson |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| *et. al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## DECLARATION OF JOHN R. CHAPMAN

I, JOHN R. CHAPMAN, hereby declare and state:

1.  I am the current Chief of the Freedom of Information Act/Privacy Act
(FOIA/PA) Office for the National Security Agency (hereinafter "NSA" or "the
Agency"). I have served with NSA for 30 years, and prior to my current assignment, I
held various management positions throughout the Agency. As the Chief, FOIA/PA
Office, I am responsible for, among other things, the processing of all FOIA requests
made directly to the Agency as well as FOIA requests directed to other agencies that
involve records that originated with NSA and/or contain NSA equities. I am also
responsible for asserting the FOIA exemptions over NSA on behalf of the Initial Denial
Authority during the administrative processing of FOIA requests.

2.  Through the exercise of my official duties, I have become familiar with the
current litigation filed by Plaintiff, Mr. William Dale MacLeod. The purpose of this
declaration is to explain the search conducted by NSA for any requests for documents

allegedly submitted by Plaintiff. I make the statements herein on the basis of my personal knowledge, as well as on information acquired by me in the course of performing my official duties.

## PROCESSING OF PLAINTIFF'S FOIA REQUEST

3. Plaintiff's Complaint, filed October 20, 2015, alleges only that "[t]he plaintiff requested personal information from the National Security Agency and received no response." Compl. ¶ 5. The Complaint contains no additional information about any requests for documents Plaintiff contends that he submitted to the Agency.

4. NSA's FOIA/PA Office is the only organization within NSA charged with receiving and processing requests for documents or information from the public. Those requests must be submitted in accordance with applicable FOIA and PA laws, 5 U.S.C. § 552 and 5 U.S.C. § 552a, respectively, and Department of Defense ("DoD") and NSA regulations found in DoD Regulation 5400.7-R and 32 C.F.R. Part 299. The FOIA/PA Office maintains a computerized document management system, in which all valid FOIA and PA requests received by the Agency are logged along with copies of all official Agency responses to those requests. Each FOIA request is assigned an identifying case number. If a valid FOIA request has been filed with NSA, a record of that request would be maintained in the document management system and would be searchable by name of requester, date of request, topic of request, or other identifiers.

5. In response to the allegation in Plaintiff's Complaint, the FOIA/PA Office conducted searches of its document management system. Relying on the limited information provided in Plaintiff's Complaint, four individuals in the FOIA/PA Office, including myself, conducted searches on 10 November 2015 and 12 November 2015.

2

The searches were conducted by requester name for any FOIA or PA requests submitted by William Dale MacLeod, and the searches included several variations of his name, including possible misspellings. The FOIA/PA Office was unable to locate any valid FOIA or PA requests submitted to NSA by Plaintiff.

I declare under penalty of perjury that the facts set forth above are true and correct.

Executed, this 25th day of February, 2016, pursuant to 28 U.S.C. §1746.

JOHN R. CHAPMAN
Chief, FOIA/PA Office
National Security Agency

3

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM DALE MACLEOD**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 15-cv-01792** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF KEVIN L. TYRRELL**

I, Kevin L. Tyrrell, declare and state as follows:

1.     I am the Associate Director of FOIA Appeals and Litigation for the Department of

Homeland Security (DHS) Privacy Office. In this capacity, I am the Department official

immediately responsible for processing appeals and litigation matters that arise under the

Freedom of Information Act (FOIA), 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5

U.S.C. § 552a (the Privacy Act), and other applicable records access provisions. I have

been employed by the DHS Privacy Office (DHS Privacy) in this capacity since July

2015. Prior to that, I held the position of FOIA Litigation Specialist. I have been with the

Department since July 28, 2014. I make the following statements based upon my personal

knowledge, which in turn is based on a personal review of the appropriate records in the

case file and coordination with relevant FOIA personnel established for processing the

subject request and upon information furnished to me in the course of my official duties.

2.      Through the exercise of my official duties, I have become familiar with the background of plaintiff's original FOIA request and DHS's response. I have also become familiar with the background of this litigation and have read a copy of the Complaint filed by plaintiff.

**The DHS Privacy Office FOIA Process**

3.      DHS Privacy is the Department of Homeland Security's Privacy Office. DHS Privacy partners with privacy staff in every DHS component to assess all new or proposed programs, systems, technologies or rule-makings for privacy risks, and recommend privacy protections and alternative methods for handling personal information to mitigate privacy risks. DHS Privacy also centralizes FOIA and Privacy Act operations to provide policy and programmatic oversight, and support implementation across the Department.

4.      The mission of DHS Privacy is to preserve and enhance privacy protections for all individuals, to promote transparency of Department operations, and to serve as a leader in the privacy community. DHS Privacy (1) evaluates Department legislative and regulatory proposals involving collection, use, and disclosure of personally identifiable information (PII); (2) centralizes FOIA and Privacy Act operations to provide policy and programmatic oversight, and support implementation across the Department; (3) operates a Department-wide Privacy Incident Response Program to ensure that incidents involving PII are properly reported, investigated and mitigated, as appropriate; (4) responds to complaints of privacy violations and provides redress, as appropriate; and (5) provides training, education and outreach to build a culture of privacy across the Department and transparency to the public.

5.      The DHS Privacy Office does not have a central database that may be searched for records that could be responsive to Freedom of Information and/or Privacy Act requests. The Office typically refers FOIA requests to the individual Component(s) within DHS that may maintain the records requested.

6.      Each Component maintains its own automated case tracking system which assigns case control numbers to, and tracks the status of, all FOIA and Privacy Act requests received by that Component. Components log all incoming FOIA and Privacy Act requests into their automated case tracking system, and input information about each request into the system (including, but not limited to, the requester's name and/or organization and, in the case of FOIA requests, the request's topic). All requesters are then notified of the case control numbers assigned to their requests. It is the custom of all Components to refer to the case control numbers in all correspondence with requesters. The automated case tracking systems are text searchable on a field-by-field basis.

7.      When any DHS Component receives a referral or tasking from DHS Privacy, it mirrors the actions of DHS Privacy in that it manages and oversees the processing of that referral or tasking within that Component. Component FOIA personnel make a determination regarding which subcomponent or program office may have responsive documents, and then task that office with a search.

**DHS Privacy**

8.      On April 14, 2014, DHS Privacy received a FOIA/Privacy Act Request from William Dale MacLeod.  The request sought the following documents:

> "I am currently inquiring on getting a Diplomatic Status card, as I am within the Canadian Government as an MP of Parliament.  I would like to know the costs, timeframe, and other necessities as per. I would also like to have the forms and booklets disclosed to;"

*See* DHS FOIA Request (attached hereto as "Exhibit A").

9.      As previously noted, the DHS Privacy Office does not have a central database that may be searched for records that could be responsive to Freedom of Information and/or Privacy Act requests. Furthermore, after a review of the request it was determined that any such records would not be under the control of the DHS Privacy Office.   Therefore, on April 14, 2014, DHS Privacy transferred the request to DHS Office of United States Citizenship and Immigration Services (USCIS) and United States Visitor and Immigration Status Indicator Technology (US-VISIT) which has since become the Office of Biometric Identity Management (OBIM) for direct response to the requester.  This transfer was premised upon the DHS Privacy Office's belief, at that time, that USCIS or OBIM may maintain the records requested.

10.      The DHS Office of United States Citizenship and Immigration Services (USCIS) is the government agency that oversees lawful immigration to the United States.  USCIS's mission statement is to secure America's promise as a nation of immigrants by providing accurate and useful information to our customers, granting immigration and citizenship benefits, promoting an awareness and understanding of citizenship, and ensuring the integrity of the nation's immigration system.  USCIS' strategic goals include: Strengthening the security and integrity of the immigration system; providing effective customer-oriented immigration benefit and information services; Supporting immigrants' integration and participation in American civic culture; Promoting flexible and sound immigration policies and programs; strengthening the infrastructure supporting the USCIS mission; Operating as a high-performance organization that promotes a highly talented

4

workforce and a dynamic work. In general, USCIS processes applications and petitions for

immigration benefits from aliens who reside in the United States and for certain classes of

aliens residing outside the United States as provided in the Immigration and Nationality

Act (INA).  USCIS does not issue visas to foreign government diplomats or officials.

11.    The Office of Biometric Identity Management (OBIM) was created in March,

2013, replacing the United States Visitor and Immigration Status Indicator Technology

(US-VISIT) Program. OBIM is part of the National Protection and Programs Directorate.

The Office of Biometric Identity Management (OBIM) supports the Department of

Homeland Security's responsibility to protect the nation by providing biometric

identification services that help federal, state, and local government decision makers

accurately identify the people they encounter and determine whether those people pose a

risk to the United States. OBIM supplies the technology for collecting and storing

biometric data, provides analysis, updates its watchlist, and ensures the integrity of the

data.

12.    On October 20, 2015, Plaintiff filed his law suit in the District Court of the District

of Columbia claiming constructive denial on the part of DHS.

13.    After a review of the Plaintiff's law suit and closer review of the original FOIA

request, and after consultation with the FOIA Offices within USCIS and OBIM, the DHS

Privacy Office determined that it transferred the Plaintiff's request to USCIS and OBIM in

error.  Specifically, the DHS Privacy Office determined that neither USCIS nor OBIM

would be possession of the records requested, because neither Component issues visas to

foreign government diplomats and officials.  Moreover, based on the content of Plaintiff's

request, the DHS Privacy Office determined that the requested records are not within the

purview of DHS, but are instead within the purview of the United States Department of State (DOS).[1]

14.    On December 2, 2015, the DHS Privacy Office transferred Plaintiff's FOIA request directly to Office of Information Programs and Services at the United Stated Department of State (DOS) and sent a letter to Plaintiff explaining the transfer.  *See* FOIA Transfer (attached hereto as "Exhibit B") and First Letter to MacLeod (attached hereto as "Exhibit C").

15.    On December 8, 2015, the DHS Privacy Office received an email from DOS indicating that DOS does not accept FOIA requests that were originally sent to another agency.   DOS advised that the requester could contact DOS directly to submit a FOIA request.

16.    Based on this information, on December 21, 2015, the DHS Privacy Office sent the Plaintiff a second letter explaining that he must submit his FOIA request directly to DOS and provided him the proper contact information to do so.  *See* Second Letter to MacLeod (attached hereto "Exhibit D").

17.    As of the date of this Declaration, the DHS Privacy Office has received no other correspondence from the Plaintiff.

---

[1] *See, e.g., Visas for Foreign Government, International Organization, and NATO Officials and Employees - Frequently Asked Questions,* U.S. Department of State, Bureau of Consular Affairs, *available at* http://travel.state.gov/content/visas/en/other/employee-of-international-organization-nato/a-g-nato-faqs.html (last visited January 31, 2016).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of February, 2016.

Kevin L. Tyrrell
Associate Director FOIA Appeals and Litigation

# EXHIBIT A



Hello

I am currently inquiring on getting a Diplomatic Status card, as I am within the Canadian Government as an MP of Parliament.

I would like to know the costs, timeframe, and other necessities as per.

I would also like to have the forms and booklets disclosed to;

William Dale MacLeod, MP Canada

345 Dufferin Street, Apt 602

Toronto, Ontario

M6K3G1;

I would furthermore like to discuss this in a meeting at the Embassy in Toronto.

Thank You

William Dale MacLeod



RECEIVED

APR 1 4 2014

PRIVACY OFFICE

# EXHIBIT B

**U.S. Department of Homeland Security**
Washington, DC 20598-0655



*Privacy Office, Mail Stop 0665*

December 2, 2015

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, DC 20522-8100

Re:    **Transfer Memo**
              **William Dale McLeod FOIA Request**

To Whom It May Concern:

The Department of Homeland Security (DHS) is in receipt of an April 14, 2015 FOIA request asking for information on a Diplomatic Status Card. It has been determined that the information sought in this FOIA request would fall under the purview of the Depart of State.

If you have any question, please contact me directly at your earliest convenience.

Sincerely,

Kevin L. Tyrrell
Associate Director FOIA Appeals and Litigation

# EXHIBIT C

**U.S. Department of Homeland Security**
Washington, DC 20528



**Homeland Security**

*Privacy Office, Mail Stop 0655*

December 2, 2015

William D. MacLeod
MP Canada
345 Dufferin Street
Apt. 602
Toronto, Ontario M6K3G1

**Re:    FOIA Request**

Dear Mr. MacLeod:

This acknowledges receipt of your April 14, 2014, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), seeking information on obtaining a Diplomatic Status Card.

Upon review of your request, I have determined that the information you are seeking is not under the purview of the Department of Homeland Security Privacy Office.  After careful review it was determined that if such records exist they would be under the purview of the Department of State.  I have forwarded your request to the Department of State and if you should wish to contact the Department of State please do so at the address below:

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, DC 20522-8100

If you want to check the statues of your request please contact the Department of State, FOIA requester service center at (202) 261-8484.

Sincerely,

*Kevin L. Tyrrell*

Kevin L. Tyrrell
Associate Director FOIA Litigation and Appeals

# EXHIBIT D

**U.S. Department of Homeland Security**
Washington, DC 20528



*Privacy Office, Mail Stop 0655*

December 21, 2015

William D. MacLeod
MP Canada
345 Dufferin Street
Apt. 602
Toronto, Ontario M6K3G1

**Re:     FOIA Request**

Dear Mr. MacLeod:

This letter is in follow up to the December 2, 2015, letter that indicated your FOIA request dated April 14, 2014, was forwarded do the Department of State by the Privacy Office.  Please be advised, I was informed by the Department of State that all FOIA request must be submitted directly to the Department of State by the person making the request.  Therefore, you will need to send your FOIA request directly to the Department of State at the address below.

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, DC 20522-8100

If you want to check the statues of your request or have other questions, please contact the Department of State, FOIA requester service center at (202) 261-8484.

Sincerely,

Kevin L. Tyrrell
Associate Director FOIA Litigation and Appeals

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM DALE MACLEOD,                    )
                                         )
        Plaintiff,                       )
                                         )
              v.                         )
                                         )   Case 1:15-cv-1792 (KBJ)
U.S. DEPT. OF HOMELAND SECURITY,         )
et al,                                   )
                                         )
        Defendants.                      )
                                         )

## DECLARATION OF ANTOINETTE B. SHINER, INFORMATION REVIEW OFFICER FOR THE LITIGATION INFORMATION REVIEW OFFICE CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

## I.   INTRODUCTION

1.    I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency").  Although I only recently assumed this position,[1] I have worked in the information review and release field since 2000.

2.    Prior to becoming the IRO for LIRO, I served as the IRO for the Directorate of Support ("DS") for over sixteen months. In that capacity, I was responsible for making classification and release determinations for information originating within the DS.  Prior to that, I was the Deputy IRO for the Director's

---

[1] I became the IRO for LIRO effective 19 January 2016.

Area of the CIA ("DIR Area") for over three years.  In that
role, I was responsible for making classification and release
determinations for information originating within the DIR Area.
Before assuming that role, I was a reviewer in the DS for seven
months, where I performed research and provided input and
recommendations on classification and release decisions.  Prior
to that position, I worked in the Public Information Program
Division within the Information Management Services Group for
over ten years engaged in all aspects of Freedom of Information
Act ("FOIA") case management.  Before transitioning to the area
of information review and release, I worked as a paralegal and
held various administrative positions within the Office of
General Counsel for over thirteen years.

        3.    I am a senior CIA official and hold original
classification authority at the TOP SECRET level under written
delegation of authority pursuant to section 1.3(c) of Executive
Order 13526.  This means that I am authorized to assess the
current, proper classification of CIA information, up to and
including TOP SECRET information, based on the classification
criteria of Executive Order 13526 and applicable regulations.
Among other things, I am responsible for the classification
review of CIA documents and information that may be the subject
of court proceedings or public requests for information under

the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4.    Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request.    I make the following statements based upon my personal knowledge and information made available to me in my official capacity.    I am submitting this declaration in support of the motion for summary judgment filed by the United States Department of Justice ("DOJ") in this proceeding.

5.    The purpose of this Declaration is to explain and justify, to the greatest extent possible on the public record, the CIA's actions in responding to Plaintiff's FOIA request. For the Court's convenience, I have divided the remainder of this declaration into four parts.    Part II summarizes Plaintiff's FOIA request and the CIA's response in this case. Part III discusses the CIA's response that it can neither confirm nor deny the existence or nonexistence of records responsive to Plaintiff's request, which is commonly referred to as a "Glomar" response.[2]    Part IV explains the application of FOIA exemptions to Plaintiff's request.    Part V is the conclusion.

---

[2] The "Glomar" term comes from the case Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which upheld the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning CIA's reported contacts with the media regarding Howard Hughes's ship, the "Hughes Glomar Explorer."

3

## II.  PLAINTIFF'S FOIA REQUEST

6.   In a letter dated 28 August 2014, Canadian national William Dale MacLeod ("Plaintiff") submitted a FOIA request to the CIA Information and Privacy Coordinator seeking, among other things, any information that "the Central Intelligence Agency, may have in my name."[3]  A true and correct copy of Plaintiff's 28 August 2014 letter is attached as Exhibit A.

7.   By letter dated 12 September 2014, the CIA provided a response to Plaintiff's FOIA request.  Regarding Plaintiff's request for information that the CIA had "in [his] name," the Agency's letter stated the following:

> [I]n accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request.  The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended, and section 102A(i)(1) of the National Security Act of 1947, as amended.

The letter added that Plaintiff had the right to appeal the CIA's response "within 60 days from the date of this letter."[4]  A

---

[3] Plaintiff's FOIA request also sought several categories of information from the CIA which I understand are the subject of a Motion to Dismiss that has been filed by DOJ on the Agency's behalf in this case.  The additional categories of information sought by the Plaintiff will not be addressed in this Declaration, for reasons discussed in DOJ's Motion to Dismiss.

[4] Regarding the additional categories of records referenced in the above footnote and discussed in DOJ's Motion to Dismiss, the CIA's 12 September

true and correct copy of the CIA's 12 September 2014 letter is
attached as Exhibit B.

8.    Plaintiff did not appeal the CIA's 12 September 2014
response.  On 28 September 2015, Plaintiff filed the instant
action.

## III.  THE CIA'S GLOMAR DETERMINATION

9.    The CIA's response to Plaintiff's FOIA request for
information that the CIA had "in [his] name" – neither
confirming nor denying the existence or nonexistence of records
– is commonly referred to as a Glomar response.  Such a response
is provided for under Executive Order 13526, section 3.6(a): "An
agency may refuse to confirm or deny the existence or
nonexistence of requested records whenever the fact of their
existence or nonexistence is itself classified under this order
or its predecessors."  Plaintiff's FOIA request is just such a
circumstance, wherein the mere confirmation or denial of the
existence or nonexistence of responsive records would itself
reveal a classified fact – namely, whether the CIA has gathered
information on a specific foreign national.

10.    The CIA is charged with carrying out a number of
important functions on behalf of the United States, which
include, among other activities, collecting and analyzing

---

2014 letter explained to the Plaintiff that the CIA could not accept his FOIA
request in its current form because it did not reasonably describe the
information being sought and would require the CIA to perform an unreasonably
burdensome search.

foreign intelligence and counterintelligence. A defining characteristic of the CIA's intelligence activities is that they are typically carried out through clandestine means, and therefore they must remain secret in order to be effective. In the context of FOIA, this means that the CIA must carefully evaluate whether its response to a particular FOIA request could jeopardize the clandestine nature of its intelligence activities or otherwise reveal previously undisclosed information about its sources, capabilities, authorities, interests, strengths, weaknesses, or resources.

11. In a typical scenario, a FOIA requester submits a request to the CIA for information on a particular subject and the CIA conducts a records search and advises whether responsive records were located. If records are located, the CIA provides the requester with non-exempt records or reasonably segregable non-exempt portions of records, and withholds the remaining exempt records and exempt portions of records. In this typical circumstance, the CIA's response – either to provide or not provide the records sought – actually confirms the existence or nonexistence of CIA records related to the subject of the request. Typically, such confirmation poses no harm to the national security because the fact that the CIA possesses or does not possess records is not itself a classified fact,

although the information contained within the records may be classified.

12.   In other cases, however, the mere confirmation or denial of the existence or nonexistence of responsive records would itself reveal a classified fact:  specifically, whether the CIA has or had an intelligence interest in, or clandestine connection to, a particular individual or activity.  In those cases, the CIA asserts a Glomar response because the existence or nonexistence of CIA records responsive to the request is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security.

13.   To illustrate, consider a FOIA request for all records within the CIA's possession regarding a specific clandestine technology.  The CIA's acknowledgement of responsive records, even if the CIA withheld the records pursuant to a FOIA exemption, would reveal that the CIA has an interest in this clandestine technology and may be employing the technology. Moreover, if the CIA were required to provide information about the number and nature of the responsive records it withheld (including the dates, authors, recipients, and general subject matter of each record), as is typically required in FOIA litigation, the CIA's response would reveal additional

information about the depth and breadth of the CIA's interest in or use of that technology.

14. Conversely, if the CIA were to confirm that no responsive records existed, that fact would itself be revealing, because the absence of records would tend to reveal that the CIA does not have an interest in or is not able to use the technology at issue. That fact could be extremely valuable to the targets of CIA intelligence efforts, who could carry out their activities with the knowledge that the CIA would be unable to monitor their activities using that particular technology.

15. In short, to be credible and effective, the CIA must assert a Glomar response consistently in all cases where the existence or nonexistence of responsive records is itself a classified fact, including in those cases in which the CIA does not possess any records responsive to a particular request. If the CIA were to invoke a Glomar response only when it actually possessed responsive records, the Glomar response would be interpreted as an admission that responsive records exist. This practice would reveal the very information that the CIA must protect in the interest of national security.

16. After careful review, I have determined that if the CIA were to confirm the existence of records responsive to Plaintiff's FOIA request, such confirmation would indicate that the CIA had an interest in the activities of foreign national

8

William Dale MacLeod.  On the other hand, if the CIA were to respond by admitting that it did not possess any responsive records, it would suggest that the CIA did not have an interest in the activities of William Dale MacLeod.  Either confirmation would reveal sensitive information about the CIA's intelligence sources and methods that is protected from disclosure by Executive Order 13526 and statute.  Therefore, the CIA asserted a Glomar response to Plaintiff's FOIA request because the existence or nonexistence of responsive CIA records is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security.

## IV.  APPLICATION OF FOIA EXEMPTIONS

### A.  FOIA Exemption (b)(1)

17.  FOIA exemption (b)(1) provides that FOIA does not require the production of records that are: "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).

18.  Section 1.1(a) of Executive Order 13526 provides that information may be originally classified under the terms of this order only if all of the following conditions are met: (1) an original classification authority is classifying the

9

information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.

19.    Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526, and as described below, I have determined that the existence or nonexistence of the requested records is a properly classified fact that concerns "intelligence activities," "intelligence sources and methods," and "U.S. foreign relations" under section 1.4 of the Executive Order, the records are owned by and under the control of the U.S. Government, and the unauthorized disclosure of the existence or nonexistence of requested records reasonably could be expected to result in damage to national security.

20.    My determination that the existence or nonexistence of the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of

information that does not require protection in the interests of national security.

### i.    Intelligence Activities

21.   Clandestine intelligence activities lie at the heart of the CIA's mission.  Terrorist organizations, foreign intelligence services, and other hostile groups use information regarding the CIA's specific intelligence capabilities, authorities, interests and resources to thwart CIA activities and to attack the United States and its interests.  These parties search continually for information regarding the activities of the CIA and are able to gather information from myriad sources, analyze this information, and devise ways to defeat CIA activities from seemingly disparate pieces of information.  Even where the subject of an intelligence interest or an individual with whom the CIA has engaged in intelligence operations is no longer of interest or engaged in operations, the CIA's adversaries continue to seek such information, as it may reveal to these adversaries how the CIA currently focuses its intelligence activities.

22.   In this case, acknowledging the existence or nonexistence of the requested records reflecting a classified connection to the CIA reasonably could be expected to cause damage to the national security by disclosing whether or not the CIA has or had an intelligence interest in foreign national

11

William Dale MacLeod, disclosing whether or not the CIA engaged in intelligence operations involving him and the location of any such operations, and indicating to the CIA's adversaries how the CIA would or would not choose to focus its intelligence activities on other individuals.

### ii.    Intelligence Sources

23.    One of the major functions of the CIA is to gather intelligence from around the world that can be used by the President and other Government officials in making important decisions.    To fulfill this responsibility, the Agency must often depend upon information that can only be gathered from knowledgeable human sources under an arrangement of absolute secrecy.    The CIA utilizes both U.S. citizens and foreign nationals to collect intelligence directly, to identify or provide access to others who may have intelligence information, or to support CIA intelligence-collection activities.    If the CIA were to provide responses either confirming or denying that it possesses records concerning any particular individual, in the absence of an acknowledged overt connection to these individuals, these admissions could identify human intelligence sources, as well as reveal information about the CIA's specific intelligence interests or activities.    Such responses, therefore, reasonably could be expected to cause serious damage to U.S. national security.    The potential damage to national

security would be magnified many times over if the CIA were to respond to all FOIA requests for information on specific individuals by identifying on which persons it maintains classified records and on which it does not.

24.  Human intelligence sources can be expected to furnish information to the CIA only when they are confident that the CIA will protect their cooperation from public disclosure.  In the case of a foreign national abroad who has been cooperating with the CIA, official confirmation of that cooperation could cause the target government to take retaliatory action against that person, his family, and associates.  Furthermore, it would also seriously damage the CIA's credibility with other intelligence sources who might conclude that the CIA is unwilling or unable to protect their cooperation with the United States from public disclosure.  To betray such confidentiality would seriously damage the United States' ability to retain present sources and recruit new sources.

25.  In this case, acknowledging the existence or nonexistence of records reflecting a classified connection to the CIA reasonably could be expected to cause damage to the national security by indicating whether or not the CIA maintained any human intelligence sources related to William Dale MacLeod, and identifying the access or lack of access any

13

such sources had to intelligence concerning William Dale
MacLeod.

### iii. Intelligence Methods

26.   Intelligence methods include the basic business
practices and methodological "tools" used by the CIA to
accomplish its mission.  Intelligence methods must be protected
from disclosure in every situation where a certain intelligence
interest, capability, or technique is unknown to those groups
that could take countermeasures to nullify its effectiveness.
Secret information collection techniques, capabilities, or
technological devices are valuable (from an intelligence
gathering perspective) only so long as they remain unknown and
unsuspected.  Once an intelligence method (or the fact of its
use in a certain situation) is discovered, its continued
successful use by the CIA is seriously jeopardized.  In fact,
detailed knowledge of intelligence methods must be protected
from disclosure because such knowledge would be of material
assistance to those who seek to detect, prevent, or damage U.S.
intelligence operations.

27.   Because foreign intelligence services view discovery
of CIA methodology as one of their primary defensive missions,
admissions with respect to intelligence sources or methods would
be of great benefit, by enabling the foreign services to
redirect their resources to identify potential CIA sources,

14

circumvent the CIA's monitoring efforts, and generally enhance their intelligence activities at the expense of the United States. As a result, the CIA's efforts can be thwarted or made more difficult, reducing the CIA's effectiveness, requiring a diversion of CIA resources, and resulting in a loss of valuable intelligence information.

28. In exercising and fulfilling its mission, the CIA must do more than prevent explicit references to an intelligence method; it must also prevent indirect references to such a method. A primary vehicle for gathering intelligence methods information is by reviewing officially released information. Foreign intelligence services have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods (from disparate and even seemingly unimportant details) to defeat CIA collection efforts. Even seemingly innocuous, indirect references to an intelligence method could have significant adverse effects when combined with other publicly available data.

29. In this case, acknowledging the existence or nonexistence of records reflecting a classified connection to the CIA reasonably could be expected to cause damage to the national security by alerting individuals of intelligence interest to what methods the CIA employed or did not employ with regard to William Dale MacLeod, thus allowing those individuals

to determine what countermeasures, if any, to take in the future
to thwart CIA intelligence collection and activities.

### iv.  U.S. Foreign Relations

30.  In addition to intelligence activities, sources and
methods, U.S. foreign relations comprise another category of
information eligible for classification pursuant to Executive
Order 13526.  I have determined that official acknowledgement
that the CIA maintains information concerning a particular
foreign national could be construed by that foreign government,
whether friend or adversary, to mean that CIA has collected
intelligence information on or recruited one of its citizens or
resident aliens.  Such a perception could adversely affect U.S.
foreign relations with that nation.  This is especially true
where U.S. allies are concerned.

31.  Further, an official acknowledgement that the CIA
maintains information on a particular individual can be
tantamount to a CIA admission that it has or has not collected
(or intends to collect) specific information on specific foreign
targets during specific time periods.  Such an admission by the
CIA invariably would adversely affect U.S. foreign relations.
If a clandestine interest in a foreign national were publicly
acknowledged, a country to which that individual traveled or in
which he lived could be expected to respond based on its
perception of the U.S. disclosure.  The foreign government's

16

response could be of a diplomatic or economic nature, a ground

for anti-American propaganda, or a reason for retaliation

against former associates, including American citizens or other

American interests.  Such responses could reasonably be expected

even though the events may be several, or even many, years past.

Experience has taught that perceptions of violation of

sovereignty will generate retribution even years later.

**B.    FOIA Exemption (b)(3)**

32.  FOIA exemption (b)(3) provides that FOIA does not

apply to matters that are:

> specifically exempted from disclosure by statute (other
> than section 552b of this title), if that statute (A)(i)
> requires that the matters be withheld from the public in
> such a manner as to leave no discretion on the issue, or
> (ii) establishes particular criteria for withholding or
> refers to particular types of matters to be withheld . . .

5 U.S.C. § 552(b)(3).

33.  Section 102A(i)(1) of the National Security Act of

1947, as amended, 50 U.S.C. § 3024(i)(1) (the "National Security

Act"), provides that the Director of National Intelligence

("DNI") "shall protect intelligence sources and methods from

unauthorized disclosure."  Accordingly, the National Security

Act constitutes a federal statute which "requires that the

matters be withheld from the public in such a manner as to leave

no discretion on the issue."  5 U.S.C. § 552(b)(3).  Under the

direction of the DNI pursuant to section 102A, and consistent

17

with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.[5] As demonstrated in Parts III and IV of this Declaration, acknowledging the existence or nonexistence of records reflecting a classified connection to the CIA would reveal information that concerns intelligence sources and methods, which the National Security Act is designed to protect.

34.    Accordingly, the fact of the existence or nonexistence of records that would reflect whether or not CIA had an intelligence interest in William Dale MacLeod is exempt from disclosure under FOIA exemption (b)(3) pursuant to the National Security Act. In contrast to Executive Order 13526, this statute does not require the CIA to identify and describe the damage to the national security that reasonably could be expected to result should the CIA confirm or deny the existence or nonexistence of records responsive to Plaintiff's FOIA request. Nonetheless, I refer the Court to the paragraphs above for a description of the damage to the national security should anything other than a Glomar response be provided by the CIA in this case.  FOIA exemptions (b)(1) and (b)(3) thus apply independently and co-extensively to Plaintiff's FOIA request.

_____

[5] Section 1.6(d) of Executive Order 12333 requires the Director of the Central Intelligence Agency to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure in accordance with guidance from the [DNI][.]"

**V.   CONCLUSION**

35.   Acknowledgement of the existence or nonexistence of
CIA records regarding William Dale MacLeod, irrespective of the
content of such putative records, would reveal classified
information implicating intelligence activities, sources and
methods and adversely affect U.S. foreign relations.  Therefore,
I have determined the only appropriate response is for CIA to
neither confirm nor deny the existence or nonexistence of such
records under FOIA exemptions (b)(1) and (b)(3).

                              *       *       *

I hereby declare under penalty of perjury that the
foregoing is true and correct.

Executed this 26th day of February 2016.


*Antoinette B. Shiner*
Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

# EXHIBIT A

C06236213                        UNCLASSIFIED

F-2014-02413

August 28th 2014

To

Information and Privacy Co-Ordinator

Central Intelligence Agency

Washington, District of Columbia

20505

From

William Dale MacLeod

345 Dufferin Street, Apt 602

Toronto, Ontario

M6K3G1

416-875-6593

Alternate Contact Number; 647-866-7430

Email; william.macleod@ryerson.ca

I am requesting that any information that the United States, and its government, and the Central Intelligence Agency, may have in my name, to be disclosed to me under the appropriate circumstances under the Identification of Criminals Act, Revised Statute of Canada, whereas this information, if available, well be used in the Supreme Court of Canada to disprove any intel allegations that may be false and any criminal record information and/or "red flags" internationally, including Interpol.

I am requesting under the Freedom of Information Act, unless otherwise allowed, any information upon myself, and in the following list provided below;

Cold War

CIA and NSA involvement with Russia

United States Involvement with Ukraine and Russia (Ukraine Crisis)

United States files on Vladimir Putin dating back to the KGB

Any files herein of the USCBP and USHS involvement with the human trafficking of children from January 1973 to Current that may involve Canada, the United States, Ukraine, Russia, and Eastern Asia (China, Japan, Peoples Republic of Korea and the Democratic Republic of Korea, etc.), including Project Spade, and any other involvement leading to the sale of children, and towards whereas international adoption maybe a factor of allegation and the deportation of authorities that(b)include Canadian Social Workers, specifically from the Province of Ontario, whereas flights connect to LGA and JFK Airports, and LAX whereas Lufthansa Airlines DE Flights are Operated and or frequented stops from aviation point CYYZ (Toronto Pearson), and the Customs Declarations of any Social Workers and Victims, and or the Captors and "child sellers" herein.

UNCLASSIFIED

C06236213

UNCLASSIFIED

Any or all flight records from 1973 to current from CYYG, LGA, JFK, and LAX whereas Lufthansa Flights were involved in international abduction.

Please respond in a timely matter as these documents well be presented to close a dangerous case and prove to Canadian "politics" that these things need to be destroyed or have higher legislative measures.

I well talk to an agent of the Central Intelligence Agency if necessary.

Thank You

William Dale MacLeod    *William Dale MacLeod*

DOB-███████ (yyyy/mm/dd)

C06236213

UNCLASSIFIED



Central Intelligence Agency
Information and Privacy Coordinator
Washington, DC 20505 Fax (703)613-3007

## FREEDOM OF INFORMATION ACT - CERTIFICATION OF IDENTITY

**Privacy Act Statement:** In accordance with 32 CFR Section 1901.13 personal data to identify the individual submitting requests by mail or by Facsimile under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this form is to ensure that the records of individuals are not wrongfully disclosed by Central Intelligence Agency (CIA). Requests will not be processed if all of this information is not furnished. False information on this form may subject the requester to criminal penalties under 5 U.S.C. Section 552a(i)(3).

Your Name (Last, First, Middle) – Mr/Mrs/Ms: _William Dale MacLeod_

Current Mailing Address: _345 Dufferin Street, Apt 602, Toronto_

_, Ontario, Canada_          Phone: _4168756593_

Subject's Full Name (Last, First, Middle): _MacLeod, William, Dale_

Any Other Names Used? _____

Date of Birth: [redacted]          Place of Birth (City, State/Country): _Charlottetown, PEI, Canada_
         Month   Day   Year

Date of Death: ___/___/___          Place of Death (City, State/Country): _____
         Month   Day   Year

**SUBJECT'S CITIZENSHIP STATUS** (Please Check One)

_____US Citizen      Social Security Number [1] ____-___-___
     OR

Other Country: _Canada_

Specific Records of Interest: _All records of the above, and the_
_attached list_

---

## COMPLETE THIS SECTION IF YOUR SUBJECT IS LIVING

**Authorization to Release Information to Another Person:** This section is to be completed by a requester who is authorizing information relating to him/herself to be released to another person. Further, pursuant to 5 U.S.C. 552a(b), I authorize the CIA to release any and all information relating to me to the following:

_William Dale MacLeod_
Print name and address to who records should be released

Subject's Signature: _William Dale MacLeod_          Date: _28th/08/2014_

[1] Providing your subject's social security number is voluntary. You are asked to provide the social security number only to facilitate the identification of records. Without the social security number, we may be unable to locate any or all records.

UNCLASSIFIED

C06236213                          UNCLASSIFIED



Central Intelligence Agency
Information and Privacy Coordinator
Washington, DC 20505  Fax (703)613-3007

## PRIVACY ACT - CERTIFICATION OF IDENTITY

**Privacy Act Statement:**  In accordance with 32 CFR Section 1901.13 personal data to identify the individual submitting requests by mail or by electronic means under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required.  The purpose of this form is to ensure that the records of individuals are not wrongfully disclosed by Central Intelligence Agency (CIA).  Requests will not be processed if all of this information is not furnished.  False information on this form may subject the requester to criminal penalties under 5 U.S.C. Section 552a(i)(3).

Your Full Name (Last, First, Middle) – (M)/Mrs/Ms: _William Dale MacLead_

Any Other Names Used? _____

Your Current Mailing Address & Phone: _345 Dufferin Street, Apt 602, Toronto, Ontario, Canada, M6K3G1, 416-875-6593_

Date of Birth: [redacted]        Place of Birth (City and State): _Charlottetown, PEI, Canada_

    Month  Day  Year

CITIZENSHIP STATUS[1] (Please Check One)

_____ US Citizen        Social Security Number [2] ____-____-____        Other Country: _Canada_

    OR

_____ Naturalized Citizen as of ____/____/____   Naturalization #: _____

        Month  Day  Year

    OR

_____ Permanent Resident Alien as of ____/____/____   PRA # _____

        Month  Day  Year

Specific Records of Interest: _All records of the above named_

**Statement Under Perjury:**  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature: _William Dale MacLead_        Date: _28th/08/2014_

[1] Individual submitting a request under the Privacy Act of 1974 must be "a citizen of the United States or an alien lawfully admitted for permanent residence", pursuant to 5 U.S.C. 552a(a)(2).  Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[2] Providing your social security number is voluntary.  You are asked to provide your social security number only to facilitate the identification of records relating to you.  Without your social security number, we may be unable to locate any or all records.

# EXHIBIT B

12 September 2014

Mr. William Dale MacLeod
345 Dufferin Street, Apt. 602
Toronto, Ontario
M6K3G1
CANADA

Reference:  F-2014-02413

Dear Mr. MacLeod:

This is a final response to your 28 August 2014 Freedom of Information Act (FOIA) request, received in the office of the Information and Privacy Coordinator on 3 September 2014, for:

1. **Any information that the United States, and its government, and the Central Intelligence Agency, may have in [your] name.**

You are also **requesting under the Freedom of Information Act, unless otherwise allowed, any information upon [yourself], and in the following list provided below;**

2. **Cold War**
3. **CIA and NSA involvement with Russia**
4. **United States Involvement with Ukraine and Russia (Ukraine Crisis)**
5. **United States files on Vladimir Putin dating back to the KGB**
6. **Any files herein of the USCBP and USHS involvement with the human trafficking of children from January 1973 to Current that may involve Canada, the United States, Ukraine, Russia, and Eastern Asia (China, Japan, Peoples Republic of Korea and the Democratic Republic of Korea, etc.), including Project Spade, and any other involvement leading to the sale of children, and towards whereas international adoption maybe a factor of allegation and the deportation of authorities that\*include Canadian Social Workers, specifically from the Province of Ontario, whereas flights connect to LGA and JFK Airports, and LAX whereas Lufthansa Airlines DE Flights are Operated and or frequented stops from aviation point CYYZ (Toronto Pearson), and the Customs Declarations of any Social Workers and Victims, and or the Captors and "child sellers" herein.**
7. **Any or all flight records from 1973 to current from CYYG, LGA, JFK, and LAX whereas Lufthansa Flights were involved in international abduction.**

We have assigned your request the reference number above. Please use this number when corresponding, so that we can identify it easily.

Regarding item 1, in accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended, and section 102A(i)(l) of the National Security Act of 1947, as amended. Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3). I have enclosed an explanation of these exemptions for your reference and retention. As the CIA Information and Privacy Coordinator, I am the CIA official responsible for this determination.

You have the right to appeal this response to the Agency Release Panel, in my care, within 60 days from the date of this letter. Please include the basis of your appeal.

Regarding items 2 – 7, we cannot accept your FOIA request in its current form because it would require the Agency to perform an unreasonably burdensome search. The FOIA requires requesters to "reasonably describe" the information they seek so that professional employees familiar with the subject matter can locate responsive information with a reasonable amount of effort. Commonly this equates to a requirement that the documents must be locatable through the indexing of our various systems. Extremely broad or vague requests or requests requiring research do not satisfy this requirement.

Therefore, in your future requests we recommend that you reasonably describe the information you seek in a manner which will allow us to locate responsive records with a reasonably amount of effort. You may consider narrowing and detailing the subject of your request by using one or more of the following approaches: requesting records on specific individuals, requesting records originated within a particular time-frame, requesting particular type of reports, such as finished intelligence, or requesting records pertaining to a specific event, circumstance, or location. You may consider requesting specific reports by title, if possible.

Sincerely,

Michele Meeks
Information and Privacy Coordinator

Enclosure

# EXHIBIT 5



## GLOBAL ENROLLMENT SYSTEM (GES)

Welcome | Search | Reports | Administration
**Text Only**



Create > GES Application

| Help | Logout |

---

## Application Description                      Back to Request page

---

| **Application ID:** | ███████ | **AIS Program:** | NEXUS |
|---|---|---|---|
| **Request Type:** | Initial Enrollment | **Reason:** | |
| **Enrollment POE:** | | **Application Origin:** | GOES |

## Biographic

---

| **PASSID:** | | **GEC Number:** | |
|---|---|---|---|
| **First Name:** | William | | |
| **Middle Name:** | Dale | | |
| **Last Name:** | MacLeod | **Birth Date:** | ███ |
| **Suffix:** | | **Gender:** | Male |
| **Maternal Name:** | | **Height:** | 5 ft. 9 in. |
| **Other Last Names:** | | **Eye Color:** | Hazel |
| **Nick Names:** | | **Hair Color:** | |
| **Birth Country:** | CANADA | **Language Preference:** | English |
| **Birth State/Province:** | ONTARIO | **Employment Status:** | Child |
| **Birth City:** | Toronto | **Occupation:** | |
| **Primary Citizenship:** | CANADA | **Unemployment Date:** | |
| **Other Citizenship:** | | | |
| **Residence:** | | | |
| **Primary Residence:** | CANADA | **Permanent Residence:** | |
| **E-mail Address:** | snookies.macleod@gmail.com | | |
| **Scars:** | | | |

---

| **Legal Guardian:** | | | |
|---|---|---|---|
| **First Name:** | ███ | **Birth Date:** | ███ |
| **Last Name:** | ███ | **Gender:** | ███ |
| **Middle Name:** | ███ | **Suffix Code:** | |

████████████████████████████

**Maternal Name:** ███████

## Address

**ResidentialAddress**
**Effective Date:** Oct 2008 -
**Street:** 345 DUFFERIN ST 602
**City:** TORONTO    **State/Province:** ON
**Country:** CANADA    **Postal Code:** M6K3G1
**Colonia/Neighborhood:**
**Home Phone Number:** (I) 01 2130056

**ResidentialAddress**
**Effective Date:** Jan 2013 - Mar 2013
**Street:** 42 Budworth Drive
**City:** Toronto    **State/Province:** ON
**Country:** CANADA    **Postal Code:**
**Colonia/Neighborhood:**

**ResidentialAddress**
**Effective Date:** Jun 2009 - Jun 2012
**Street:** 10 Beverly Street East
**City:** St George, Brant, South Dumfries    **State/Province:** ON
**Country:** CANADA    **Postal Code:** N0E1N0
**Colonia/Neighborhood:**

## Employment

**Employment Status:** Child    **Occupation:**
**Name:**
**Effective Date:** Nov 1997 -
**Street:**
**City:**    **State/Province:**
**Country:**    **Postal Code:**
**Colonia/Neighborhood:**    **Employment Description:**
**Phone Number:**    **Zone:**

**Employment Status:** Student    **Occupation:**
**Name:**
**Effective Date:** Sep 2012 -
**Street:**
**City:**    **State/Province:**
**Country:**    **Postal Code:**
**Colonia/Neighborhood:**

**Phone Number:**

**Employment
Description:
Zone:**

## Document

| | | | |
|---|---|---|---|
| **Type:** | Birth Document | **Document Number:** | |
| **Issue Date:** | | **Expiration Date:** | |
| **First Name:** | William | **Birth Date:** | |
| **Last Name:** | MacLeod | | |
| **Suffix Name:** | | | |
| **Maternal Name:** | | | |
| **Issue Country:** | CANADA | **State/Province:** | PRINCE EDWARD ISLAND |
| **Class of Admission:** | | | |
| **A Number:** | | **Registry Group:** | |
| **Proof of Admissibility:** | Y | **Proof of Citizenship:** | Y |
| **Proof of Residency:** | N | **Proof Country:** | CANADA |
| **Enhanced Drivers License:** | | **Commercial Drivers License:** | |
| **Hazardous Materials:** | | **MRZ Certification:** | |

## Conveyance

## Question/Answer

Have you ever been convicted of an offense in any country for which you have not received a pardon?

**Question Answer:** Yes

**Remarks:** Utter Threat Intent Of Bodily Harm or Death contrary to Section 264.01(a) of the Criminal Code (Canada) Given Bail until proven guilty. After proven guilty, it is diversion, however is a false charge and the person is within seven days of this application well be charged with slander, malicious intent, abduction, conspiracy of abduction, association to abduction, and alteration of a book or document contrary to section 416(1)(a) of the Criminal Code (Canada), Fraud (396.(1)(a) of the Criminal Code (Canada) Association to Assault section 265.(3)(c), Conspiracy to Assault (265.4.d), of the Criminal Code (Canada).

**Country:**

Have you ever received a waiver of inadmissibility to the U.S. from a U.S. government agency?

Question
Answer:            No
Remarks:
Country:

Have you ever been approved by Citizenship and Immigration Canada for rehabilitation because of past criminal activity?

Question
Answer:            No
Remarks:
Country:

Have you ever been found in violation of customs or immigration laws or other federal import laws?

Question
Answer:            No
Remarks:
Country:

**Travel History**

# EXHIBIT 6

 Print

NEXUS

Mar 27, 2014

WILLISTON, VT
PO BOX 946
Williston, VT 05495
US

WILLIAM MACLEOD
345 DUFFERIN ST 602
TORONTO, ON M6K3G1
CA

RE: Your NEXUS Program Membership 984259726

Dear WILLIAM MACLEOD :

Thank you for your application to the NEXUS program of U.S. Customs and Border Protection.

NEXUS is a voluntary program available to travelers that pass a comprehensive background investigation. Applicants found to be ineligible for NEXUS participation may still be permitted to enter into the United States although they will not be permitted to use the NEXUS dedicated lanes.

We regret to inform you that your membership in NEXUS has been disapproved for the following reason(s):

You have been convicted and/or arrested for a criminal offense
        Disclosed pending Canada criminal charges do not meet the program eligibility requirements.

If you believe the decision was based upon **inaccurate information**, you may contact the local trusted traveler Enrollment Center to schedule an appointment to speak with a supervisor. A list of locations can be found at: www.cbp.gov/xp/cgov/travel/trusted_traveler/

If necessary, you may also write to the CBP Trusted Traveler Ombudsman at:

U.S. Customs and Border Protection
PO Box 946
Williston, VT 05495
Attention: CBP Ombudsman

The review by either the Enrollment Center or the Ombudsman will be based on the information provided by you and should include any information to further clarify a record, explain an incident or

arrest, or show the disposition of criminal charges. Please remember that the following circumstances may make you ineligible for participation:

- Providing false or incomplete information on the application;
- Convictions for any criminal offense or pending criminal charges to include outstanding warrants;
- Violations of any customs, immigration, or agriculture regulations or laws in any country;
- Inadmissibility to the United States under immigration laws;
- Receipt of a criminal pardon from any country; or
- Other circumstances that indicate to CBP that you have not qualified as "low risk."

In addition to this letter, you may receive an additional letter concerning your NEXUS application from Canada Border Services Agency.

Sincerely,

Supervisor, NEXUS Enrollment Center
U.S. Customs and Border Protection

# EXHIBIT 7

PO Box 946
Williston, VT 05495

 **U.S. Customs and
Border Protection**

April 24, 2015

RE: 984259726

WILLIAM MACLEOD
345 DUFFERIN STREET #602
TORONTO ON  M6K 3G1
CANADA

Dear WILLIAM MACLEOD:

Thank you for your correspondence requesting reconsideration for your Trusted Traveler application.  U.S. Customs and Border Protection (CBP) has completed a review of this matter.  Please allow me to outline our findings.

Participation in CBP Trusted Traveler Programs is voluntary and is available to persons who pass a comprehensive background check.  Applicants may not qualify for participation if they:
- provide false or incomplete information on the application;
- have been convicted of any criminal offense or have pending criminal charges to include outstanding warrants;
- have been found in violation of any Customs, Immigration, or Agriculture regulations or laws in any country;
- are subjects of an investigation by any Federal, State, or local law enforcement agency;
- are inadmissible to the United States under Immigration regulation, including applicants with approved waivers of inadmissibility or parole documentation; or
- cannot satisfy CBP that all eligibility requirements are met.

CBP has determined that you do not meet the eligibility requirements for a Trusted Traveler Program for the reasons originally provided to you on your denial notification letter.  If your denial was based on a criminal conviction, customs, agriculture or immigration violation the denial remains unchanged because you did not provide sufficient evidence that CBP used incorrect or erroneous information to make the original denial determination.

If you were denied because you cannot satisfy CBP that all eligibility requirements are met, the decision stands.  CBP may use information from other agencies when making eligibility decisions and is prohibited from releasing other agency information.

Applicants who do not qualify for participation are not prohibited from entering the United States.  However, they are not permitted to use a Trusted Traveler dedicated lane to do so.

Thank you for your interest in the CBP Trusted Traveler Programs.

Sincerely,

CBP Ombudsman
Trusted Traveler Programs
FAST, NEXUS, SENTRI, GLOBAL ENTRY™

# EXHIBIT 8



**GLOBAL ENROLLMENT SYSTEM (GES)**

Welcome | Search | Reports | Administration
__Text Only__



Create > **GES Application**

| Help | Logout |

## Application Description                        [Back to Request page](#)

| | | | |
|---|---|---|---|
| **Application ID:** | ▮▮▮▮ | **AIS Program:** | NEXUS |
| **Request Type:** | Initial Enrollment | **Reason:** | |
| **Enrollment POE:** | | **Application Origin:** | GOES |

### Biographic

| | | | |
|---|---|---|---|
| **PASSID:** | | **GEC Number:** | |
| **First Name:** | William | | |
| **Middle Name:** | Dale | | |
| **Last Name:** | MacLeod | **Birth Date:** | ▮▮▮▮ |
| **Suffix:** | | **Gender:** | Male |
| **Maternal Name:** | | **Height:** | 5 ft. 11 in. |
| **Other Last Names:** | | **Eye Color:** | Hazel |
| **Nick Names:** | | **Hair Color:** | |
| **Birth Country:** | CANADA | **Language Preference:** | English |
| **Birth State/Province:** | PRINCE EDWARD ISLAND | **Employment Status:** | Unemployed |
| **Birth City:** | Charlottetown | **Occupation:** | |
| **Primary Citizenship:** | CANADA | **Unemployment Date:** | |
| **Other Citizenship:** | | | |
| **Residence:** | | | |
| **Primary Residence:** | CANADA | **Permanent Residence:** | |
| **E-mail Address:** | william.macleod@ryerson.ca | | |
| **Scars:** | | | |

| | | | |
|---|---|---|---|
| **Legal Guardian:** | | | |
| **First Name:** | ▮▮▮▮ | **Birth Date:** | ▮▮▮▮ |
| **Last Name:** | ▮▮▮▮ | **Gender:** | ▮▮▮▮ |
| **Middle Name:** | ▮▮▮▮ | **Suffix Code:** | |

**Maternal Name:**

**Address**

**ResidentialAddress**
| | | | |
|---|---|---|---|
| **Effective Date:** | Apr 2013 - | | |
| **Street:** | 345 DUFFERIN ST 602 | | |
| **City:** | TORONTO | **State/Province:** | ON |
| **Country:** | CANADA | **Postal Code:** | M6K3G1 |
| **Colonia/Neighborhood:** | | | |
| **Home Phone Number:** | (N) 647 8667430 | | |
| **Cell Phone Number:** | (N) 416 8756593 | | |

**ResidentialAddress**
| | | | |
|---|---|---|---|
| **Effective Date:** | Jan 2013 - Apr 2013 | | |
| **Street:** | 42 Budworth Drive | | |
| **City:** | Scarborough | **State/Province:** | ON |
| **Country:** | CANADA | **Postal Code:** | M1E3H9 |
| **Colonia/Neighborhood:** | | | |

**ResidentialAddress**
| | | | |
|---|---|---|---|
| **Effective Date:** | Jun 2012 - Jan 2013 | | |
| **Street:** | 345 Dufferin St 602 | | |
| **City:** | Toronto | **State/Province:** | ON |
| **Country:** | CANADA | **Postal Code:** | M6K3G1 |
| **Colonia/Neighborhood:** | | | |

**ResidentialAddress**
| | | | |
|---|---|---|---|
| **Effective Date:** | Jun 2009 - Jun 2012 | | |
| **Street:** | 10 Beverly Street East P.O. Box 853 | | |
| **City:** | Saint George, Brant | **State/Province:** | ON |
| **Country:** | CANADA | **Postal Code:** | N0E1N0 |
| **Colonia/Neighborhood:** | | | |

**ResidentialAddress**
| | | | |
|---|---|---|---|
| **Effective Date:** | Jan 2009 - Jun 2009 | | |
| **Street:** | 345 Dufferin St 602 | | |
| **City:** | Toronto | **State/Province:** | ON |
| **Country:** | CANADA | **Postal Code:** | M6K3G1 |
| **Colonia/Neighborhood:** | | | |

**ResidentialAddress**

**Effective Date:** Mar 2008 - Jan 2009

**Street:** 46 Saint Clair Gardens

**City:** Toronto          **State/Province:** ON

**Country:** CANADA        **Postal Code:** M6E3V4

**Colonia/Neighborhood:**


**ResidentialAddress**

**Effective Date:** Nov 2007 - Mar 2008

**Street:** 227 Victoria Street

Third Floor, Transitional Psych Unit

**City:** Toronto          **State/Province:** ON

**Country:** CANADA        **Postal Code:** M5B1T8

**Colonia/Neighborhood:**


## Employment

**Employment Status:** Unemployed     **Occupation:**

**Name:**

**Effective Date:** Oct 2013 -

**Street:**

**City:**                             **State/Province:**

**Country:**                          **Postal Code:**

**Colonia/Neighborhood:**            **Employment Description:**

**Phone Number:**                     **Zone:**


**Employment Status:** Unemployed     **Occupation:**

**Name:**

**Effective Date:** Oct 2013 -

**Street:**

**City:**                             **State/Province:**

**Country:**                          **Postal Code:**

**Colonia/Neighborhood:**            **Employment Description:**

**Phone Number:**                     **Zone:**


**Employment Status:** Student        **Occupation:**

**Name:**

**Effective Date:** Nov 2007 - Apr 2013

**Street:**

**City:**                             **State/Province:**

**Country:**                          **Postal Code:**

**Colonia/Neighborhood:**            **Employment Description:**

**Phone Number:**                                              **Zone:**

**Employment Status:**      Student                **Occupation:**
**Name:**
**Effective Date:**         Sep 2013 - Oct
                            2013
**Street:**
**City:**                                          **State/Province:**
**Country:**                                       **Postal Code:**
**Colonia/Neighborhood:**                          **Employment
                                                   Description:**
**Phone Number:**                                  **Zone:**

**Employment Status:**      Unemployed             **Occupation:**
**Name:**
**Effective Date:**         Apr 2013 - Sep
                            2013
**Street:**
**City:**                                          **State/Province:**
**Country:**                                       **Postal Code:**
**Colonia/Neighborhood:**                          **Employment
                                                   Description:**
**Phone Number:**                                  **Zone:**

**Employment Status:**      Child                  **Occupation:**
**Name:**
**Effective Date:**         Nov 1997 - Nov
                            2007
**Street:**
**City:**                                          **State/Province:**
**Country:**                                       **Postal Code:**
**Colonia/Neighborhood:**                          **Employment
                                                   Description:**
**Phone Number:**                                  **Zone:**

**Document**

**Type:**              Birth Document       **Document**              97-01-002318
                                            **Number:**
**Issue Date:**                             **Expiration Date:**
**First Name:**        WILLIAM              **Birth Date:**
**Last Name:**         MACLEOD
**Suffix Name:**
**Maternal Name:**
**Issue Country:**     CANADA               **State/Province:**       PRINCE
                                                                      EDWARD
                                                                      ISLAND

**Class of
Admission:**

**A Number:**                          **Registry Group:**
**Proof of**           Y               **Proof of**              Y
**Admissibility:**                     **Citizenship:**
**Proof of**           N               **Proof Country:**    CANADA
**Residency:**
**Enhanced**                           **Commercial**
**Drivers License:**                   **Drivers License:**
**Hazardous**                          **MRZ**
**Materials:**                         **Certification:**

**Conveyance**

**Question/Answer**

Have you ever been convicted of an offense in any country for which you
have not received a pardon?
Question
Answer:         No
Remarks:
Country:

Have you ever received a waiver of inadmissibility to the U.S. from a U.S.
government agency?
Question
Answer:         No
Remarks:
Country:

Have you ever been approved by Citizenship and Immigration Canada for
rehabilitation because of past criminal activity?
Question
Answer:         No
Remarks:
Country:

Have you ever been found in violation of customs or immigration laws or
other federal import laws?
Question
Answer:         No
Remarks:
Country:

**Travel History**

# EXHIBIT 9

 Print

☒ NEXUS

Nov 20, 2015


WILLISTON, VT
PO BOX 946
Williston, VT 05495
US

WILLIAM MACLEOD
345 DUFFERIN ST 119
TORONTO, ON M6K3G1
CA




RE: Your NEXUS Program Membership #984259726

Dear WILLIAM MACLEOD:

Thank you for your application to the NEXUS program of U.S. Customs and Border Protection.

NEXUS is a voluntary program available to travelers that pass a comprehensive background investigation. Applicants found to be ineligible for NEXUS participation may still be permitted to enter into the United States although they will not be permitted to use the NEXUS dedicated lanes.

We regret to inform you that your membership in NEXUS has been disapproved for the following reason(s):

Other
        You do not meet the program eligibility requirements.
        no comment entered

If you believe the decision was based upon **inaccurate information**, you may contact the local trusted traveler Enrollment Center to schedule an appointment to speak with a supervisor. A list of locations can be found at: www.cbp.gov/travel/trusted-traveler-programs

If necessary, you may also write to the CBP Trusted Traveler Ombudsman at:

U.S. Customs and Border Protection
PO Box 946
Williston, VT 05495
Attention: CBP Ombudsman

12/31/2015

The review by either the Enrollment Center or the Ombudsman will be based on the information provided by you and should include any information to further clarify a record, explain an incident or arrest, or show the disposition of criminal charges. Please remember that the following circumstances may make you ineligible for participation:

- Providing false or incomplete information on the application;
- Convictions for any criminal offense or pending criminal charges to include outstanding warrants;
- Violations of any customs, immigration, or agriculture regulations or laws in any country;
- Inadmissibility to the United States under immigration laws;
- Receipt of a criminal pardon from any country; or
- Other circumstances that indicate to CBP that you have not qualified as "low risk."

In addition to this letter, you may receive an additional letter concerning your NEXUS application from Canada Border Services Agency.

Sincerely,


Supervisor, NEXUS Enrollment Center
U.S. Customs and Border Protection