# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           :

WILLIAM DALE MACLEOD,        :
                           :
          Plaintiff,     :
                           :
      v.                  :     No. 15-cv-1792 (KBJ)
                           :
UNITED STATES DEPARTMENT OF   :
HOMELAND SECURITY, _et al._,     :
                           :
         Defendants.    :
_____ :

## <u>MEMORANDUM OPINION</u>

Pro se plaintiff William MacLeod is a Canadian national who twice applied to the United States Customs and Border Protection ("CBP") agency for a "NEXUS card"—a credential that expedites customs processing when one crosses the border between the United States and Canada. CBP denied both of MacLeod's NEXUS applications, and in the instant lawsuit, MacLeod appears to challenge the propriety of those denials. (_See_ Compl., ECF No. 1, ¶¶ 1, 8–10.) MacLeod's complaint also references the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") (_id._ ¶¶ 4–7), and contends that MacLeod submitted records requests to the Department of Homeland Security ("DHS"), the Central Intelligence Agency ("CIA"), the National Security Administration ("NSA"), and the General Services Administration ("GSA"), and that those agencies have thus far failed to furnish the requested documents (_id._).

Before this Court at present is a motion that the defendant federal agencies—the CBP, DHS, CIA, NSA, and GSA (collectively "Defendants")—have filed, seeking

outright dismissal of one of the claims in MacLeod's complaint and summary judgment with respect to the others. (*See* Defs.' Mem. in Support of Mot. to Dismiss & Mot. for Summ. J. ("Defs.' Mem."), ECF No. 8, at 42–49) (arguing that MacLeod's claim regarding the denial of his NEXUS applications must be dismissed); *see also id.* at 17–19 (maintaining that summary judgment is warranted in favor of GSA and NSA because neither has any record of receiving a FOIA request from MacLeod); *id.* at 19–42 (contending that DHS does not maintain the records that MacLeod requested, and that MacLeod failed to exhaust his administrative remedies with respect to the CIA's processing-related determination).)[1]  For the reasons explained below, this Court finds that MacLeod has conceded to the dismissal of his NEXUS-related claim against CBP, and that each of the other agency defendants has established (for various reasons) that there is no genuine issue of material fact with respect to any of MacLeod's FOIA claims.  Consequently, Defendants' omnibus Motion to Dismiss and Motion for Summary Judgment will be **GRANTED**.  A separate Order consistent with this Memorandum Opinion will follow.

## I.   BACKGROUND

### A.   The Facts[2]

#### 1.   MacLeod's Applications To The NEXUS Program

MacLeod is a Canadian national who twice applied to participate in a customs program that "is administered jointly by the [United States] and Canada and provides

---

[1]  Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns.

[2]  The facts recited herein are drawn primarily from the defendant agencies' statement of material facts, and the affidavits and materials that are appended to the parties' briefs.  Although review of such materials is ordinarily impermissible when evaluating a motion that seeks dismissal of a plaintiff's

for expedited travel between the countries for certain pre-approved, low risk travelers."

(Defs.' Mem. at 42; *see also id.* at 42–44 (describing the NEXUS program, which is

administered jointly with Canada pursuant to 8 U.S.C. § 1753 and is one of CBP's

voluntary "Trusted Traveler" programs).) NEXUS cards that facilitate expedited border

crossings are "available to persons who pass a comprehensive background check"

(Letter from CBP Ombudsman to William MacLeod (Apr. 24, 2015) ("2015

Reconsideration Denial Letter"), Ex. 7 to Defs.' Mem., ECF No. 8-2 at 63), and it is

undisputed that criminal convictions or pending criminal charges of any sort are a

disqualifying factor (*see id.*). Notably, CBP's denial of a NEXUS application does not

mean that an individual cannot enter the United States from Canada; rather, such

individuals simply "will not be permitted to use the NEXUS dedicated lanes" at border

checkpoints. (Letter from Supervisor, NEXUS Enrollment Ctr. to William MacLeod

(Mar. 27, 2014) ("2014 Denial Letter"), Ex. 6 to Defs.' Mem., ECF No. 8-2 at 60.)

MacLeod submitted his first NEXUS application via DHS's website "[s]ometime

on or before March 27, 2014[.]" (Defs.' Mem. at 43.) MacLeod disclosed two relevant

facts on this application form: (1) that he had been convicted in Canada of "Utter[ing]

Threat Intent Of Bodily Harm or Death contrary to Section 264.01(a) of the Criminal

Code (Canada)[,]" and (2) that he had not been pardoned for that crime. (Global

Enrollment Sys. Application, Ex. 5 to Defs.' Mem., ECF No. 8-2 at 57.) CBP denied

MacLeod's application by letter dated March 27, 2014, on the grounds that MacLeod

---

claim, *see Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 192 (D.D.C. 2016), MacLeod does not
contest the basic facts as Defendants articulate them, nor does he oppose the arguments that CBP makes
in seeking dismissal of his claim. (*See infra* Part III.A.) In any event, MacLeod's two-page pleading
consists of a bare list of grievances divorced from any narrative content that could possibly be the basis
for this Memorandum Opinion's discussion of the facts that pertain to MacLeod's claims.

did "not meet the program eligibility requirements" as a result of this criminal conviction. (2014 Denial Letter.) Thereafter, in September of 2014, and presumably in conjunction with an appeal of this initial denial, CBP requested that MacLeod provide the agency with copies of court records showing that he had been acquitted of the criminal conviction that he had disclosed. (*See* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 13, at 32, 60.) As of October 3, 2014, CBP had not received the requested documents, and on October 6, 2014, CBP issued MacLeod another letter denying this NEXUS application. (*See id.* at 60–61.)[3] MacLeod sought reconsideration of this denial, and on April 24, 2015, CBP affirmed its initial decision. (*See* 2015 Reconsideration Denial Letter.)[4]

MacLeod reapplied for the NEXUS program "[s]ometime on or before November 20, 2015." (Defs.' Mem. at 44). In response to the same application question regarding whether he had "ever been convicted of an offense in any country for which [he has] not received a pardon," MacLeod responded, "No." (Global Enrollment Sys. Application, Ex. 8 to Defs.' Mem., ECF No. 8-2 at 69.). CBP again denied MacLeod's application on the grounds that he did "not meet the program eligibility requirements[,]" without providing any further comment. (Letter from Supervisor, NEXUS Enrollment Ctr. to William MacLeod (Nov. 20, 2015) ("2015 Denial Letter"), Ex. 9 to Defs.' Mem., ECF No. 8-2 at 71.) MacLeod does not allege that he appealed this denial determination.

---

[3] For reasons that are not clear, this denial letter apparently stated that CBP was denying MacLeod's application on the grounds that MacLeod "appear[ed] to be an intended immigrant without legal status in the USA." (Pl.'s Opp'n at 61.)

[4] CBP informed MacLeod that the agency denied his reconsideration request "for the reasons originally provided to you on your denial notification letter." (2015 Reconsideration Denial Letter.)

2.     MacLeod's Freedom Of Information Act Requests

Meanwhile, in this same timeframe and in an effort that appears to have nothing to do with MacLeod's quest for a NEXUS card, MacLeod allegedly sought records from various federal agencies.  (*See* Compl. ¶¶ 4–7 (alleging that he requested information from the CIA, NSA, GSA, and DHS.)  Only DHS and CIA have a record of receiving any FOIA request from MacLeod.  (*See* Defs.' Mem. at 17–18.)

a.     *Department of Homeland Security*

On April 14, 2014, the Privacy Office of DHS received a letter from MacLeod, which it construed as a FOIA request.  (*See* Ex. A to Decl. of Kevin L. Tyrrell ("Tyrrell Decl."), ECF No. 8-2 at 19.)  In its entirety, the letter stated:

> Hello
>
> I am currently inquiring on getting a Diplomatic Status card, as I am within the Canadian Government as an MP of Parliament.
>
> I would like to know the costs, timeframe, and other necessities as per.
>
> I would also like to have the forms and books disclosed to [me at my address.]
>
> I would furthermore like to discuss this in a meeting at the Embassy in Toronto.
>
> Thank you
>
> William Dale MacLeod

(*Id*.)  The DHS Privacy Office determined that it did not have any responsive records in its control, but that DHS's Office of United States Citizenship and Immigration Services ("USCIS") and United States Visitor and Immigration Status Indicator Technology ("US-VISIT") might have the requested information; therefore, the Privacy

Office transferred MacLeod's letter to USCIS and US-VISIT for processing and a response. (*See* Tyrrell Decl., ECF No. 8-2 at 13, ¶ 9.) At the time MacLeod filed his complaint in October of 2015, DHS had not responded to MacLeod with a final determination on the FOIA request, but the agency has subsequently represented that "the requested records are not within the purview of DHS [at all], but are instead within the purview of the United States Department of State[.]" (*Id.* at 14, ¶ 13; *see also infra* Sec. III.B.2.)

b.     *Central Intelligence Agency*

By letter dated August 28, 2014, MacLeod submitted a FOIA request to the CIA seeking seven categories of information, as follows:

1. Information in MacLeod's name;
2. Information relating to the Cold War;
3. Information relating to "CIA and NSA involvement with Russia";
4. Information relating to "United States Involvement with Ukraine and Russia (Ukraine Crisis)";
5. "United States files on Vladimir Putin dating back to the KGB";
6. "Any files herein of the USCBP and USHS involvement with the human trafficking of children from January 1973 to Current that may involve Canada, the United States, Ukraine, Russia, and Eastern Asia . . . . , including Project Spade, and any other involvement leading to the sale of children"; and
7. "Any or all flight records from 1973 to current from CYYG, LGA, JFK, and LAX whereas Lufthansa Flights were involved in international abduction."

(Ex. A to Decl. of Antoinette B. Shiner ("Shiner Decl."), ECF No. 8-2 at 47–48 ("CIA FOIA Request").)

On September 12, 2014, the CIA issued a response to MacLeod's request that focused on two different aspects of his FOIA inquiry. (*See* Shiner Decl. ¶ 7.) With respect to MacLeod's request for information in his own name, the CIA neither confirmed nor denied the existence of any records in its files in MacLeod's name, on

the grounds that "[t]he fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure" (Letter from Michele Meeks, Information and Privacy Coordinator, to William Dale MacLeod (Sept. 12, 2014) ("CIA Response Letter"), Ex. B to Shiner Decl., ECF No. 8-2 at 52)—which is colloquially known as a "*Glomar* response."[5]  With respect to the remaining items that MacLeod sought in his FOIA request, the CIA refused to process the request on the grounds that the request did not "reasonably describe" the specific records MacLeod sought, and would therefore require the CIA "to perform an unreasonably burdensome search."  (*Id.* at 53.) MacLeod did not pursue an administrative appeal of the CIA's response to his FOIA request through the CIA's Agency Release Panel.  (*See* Shiner Decl. ¶ 8.)

### B.      Procedural History

On October 20, 2015, MacLeod initiated the instant pro se lawsuit.  The two-page document lists various items in ten separate paragraphs, making what appears to be challenges to CBP's denial of MacLeod's NEXUS applications, the CIA's refusal to

---

[5] Glomar responses are "named for the *Hughes Glomar Explorer*, a ship used in a classified Central Intelligence Agency project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).  The FOIA permits an agency to issue a *Glomar* response with respect to (1) certain law enforcement records, the disclosure of which could reasonably be expected to interfere with enforcement proceedings; (2) informant records; and (3) certain classified records.  *See* 5 U.S.C. § 552(c); *see also Subh v. CIA*, 760 F. Supp. 2d 66, 72 (D.D.C. 2011) (finding that CIA's *Glomar* response to plaintiff's request for records regarding himself was appropriate, because "any further response to Plaintiff's FOIA request would result in disclosure of whether it has an intelligence interest in [p]laintiff, which, in light of the CIA's covert intelligence responsibilities, would amount to the disclosure of an intelligence method"); *People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 462 F. Supp. 2d 21, 26 (D.D.C. 2006) (concluding that NSA's *Glomar* response to a first-person FOIA request was proper "because confirmation or denial of the NSA's surveillance of any particular target would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities and methods" (internal quotation marks and citation omitted)).

release information in response to his FOIA request, and DHS's failure to respond to his FOIA request. (*See* Compl., ECF No. 1, ¶¶ 1, 4, 7.)[6] MacLeod's complaint also names NSA and GSA as defendants, and asserts that MacLeod requested records from NSA and the "United States Department of General Services[,]" but he did not receive any response from the NSA, and the "United States Department of General Services" claimed that it does not have the information that MacLeod requested. (*Id.* ¶¶ 5–6.)[7]

After receiving the bare list of grievances that comprises MacLeod's complaint, DHS's Privacy Office determined that it was a mistake to have transferred MacLeod's letter requesting documents to its internal offices rather than the State Department. (*See* Tyrrell Decl. ¶ 13.) Accordingly, DHS forwarded MacLeod's request to the State Department. (*See* Ex. C. to Tyrrell Decl., ECF No. 8-2 at 23.) The State Department then informed DHS that it would only process MacLeod's FOIA request if MacLeod submitted the letter directly to the State Department, and DHS passed this information along to MacLeod. (*See* Ex. D. to Tyrrell Decl., ECF No. 8-2 at 25.)

On March 1, 2016, Defendants filed the pending motion to dismiss and for summary judgment. In the motion, CBP argues that NEXUS decisions are committed by law to CBP's discretion, and thus are unreviewable under the APA, and that CBP's denials of MacLeod's NEXUS applications were not arbitrary or capricious in light of

---

[6] The title of MacLeod's complaint references only "the Constitution of the United States of America, the Immigration Act of 1990, and the Freedom of Information Act[,]" (Compl.), but defendant CBP has interpreted MacLeod's pleading as also bringing a claim against the agency under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (*see* Defs.' Mem. at 42). A liberal reading of MacLeod's disjointed assertions regarding the denial of his application for a NEXUS card supports this interpretation.

[7] The "United States Department of General Services" is an entity that does not exist. The Court assumes, along with Defendants, that MacLeod has intended to name the U.S. General Services Administration as a defendant in this action.

MacLeod's disclosed criminal history. (Defs.' Mem. at 42–49.) With respect to MacLeod's FOIA claims, GSA and NSA argue that the claims against them should be dismissed because neither agency has any record of MacLeod submitting a FOIA request to it (*see id.* at 17–19), and DHS contends that, while it did receive a letter from MacLeod and undertook to process his records request, that agency does not maintain the records that MacLeod seeks (*see id.* at 19–23). The CIA—which, as explained above, received a FOIA request from McLeod and issued a *Glomar* response with respect to one part and declined to process the remainder—asserts that it is entitled to summary judgment because MacLeod failed to exhaust FOIA's administrative remedies, insofar as he did not appeal the agency's response to the first item he requested (records regarding himself), and with respect to the other records sought, MacLeod did not submit a request that "compl[ied] with the administrative requirements set forth in the agency's FOIA regulations." (*Id.* at 23–31.)

On March 11, 2016, this Court issued an Order advising MacLeod of his obligations under the Federal Rules of Civil Procedure and the local rules of this Court to respond to Defendants' motion, and specifically warning MacLeod that, if he did not respond to the motion by April 15, 2016, the Court would treat the motion as conceded. (*See* Order, ECF No. 10.) When MacLeod did not file a timely response, this Court issued an order requiring MacLeod to show cause why the case should not be dismissed for failure to prosecute. (*See* Order, ECF No. 12.) MacLeod thereafter submitted a package of materials that this Court characterized as his "opposition" to Defendants' motion. (*See* ECF No. 13 ("Pl.'s Opp'n").)

Notably, and significantly for present purposes, the materials MacLeod has submitted do not respond directly to *any* of Defendants' statements of fact or legal arguments. Instead, MacLeod makes several disjointed requests and contentions: for instance, he asks that his "Criminal Record [be removed] from United States Databases" (*id.* at 8, ¶ 2); he asserts that the materials that he requested from the CIA are "critical to the necessary evidence required for revision of the Child Protection System" (*id.* at 9, ¶ 12); and he references Canadian law as a basis for releasing records to him (*id.* at 8, ¶ 9). MacLeod also appends to his two-page statement a variety of documents that do not clearly pertain in any way to the merits of this action or Defendants' arguments, including materials that appear to be related to cases he has filed in Canadian courts (*id.* at 24–35), printouts of Canadian statutes and court rules (*id.* at 37–49, 73–110), records related to his prior criminal conviction (*id.* at 112–130), and college enrollment and financial aid documents (*id.* at 136–137, 146–160). (*See also* Pl.'s Notice, ECF No. 18, at 3–5 (seeking to compare the instant lawsuit with George Zimmerman's shooting of Trayvon Martin).)

Defendants' motion to dismiss MacLeod's complaint and for summary judgment became ripe on June 22, 2016. (*See* Reply in Further Support of Defs.' Mot., ECF No. 15.) In their reply to MacLeod's materials, Defendants reiterate their core contentions, and they also observe that while MacLeod's "'opposition' spills considerable ink on his additional reasons for wanting certain documents" and other "irrelevant and/or incoherent matters[,]" his filing "offers little, if any, argument in opposition to the points made" by Defendants. (*Id.* at 1.)

## II. LEGAL STANDARDS

### A. Motions To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)

CBP moves for dismissal of MacLeod's NEXUS-related APA claim under Federal Rule of Civil Procedure 12(b)(6), which authorizes a defendant to move to dismiss a complaint on the grounds that the pleading "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint by raising the question of whether or not the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"Under Local Civil Rule 7(b), if any party fails to file a response to a motion within the prescribed time, 'the Court may treat the motion as conceded.'" *Washington v. United States*, No. 17-cv-0111, 2017 WL 1232400, at *1 (D.D.C. Apr. 3, 2017) (quoting LCvR 7(b).) The D.C. Circuit has found that it is not an abuse of discretion for a district court to grant as conceded an unopposed motion to dismiss a complaint so long as the dismissal is without prejudice. *See Jordan v. Ormond*, No. 15-7151, 2016 WL 4098823, at *1 (D.C. Cir. July 22, 2016); *see also Cohen v. Bd. of Trustees of the Univ. of D.C.*, 819 F.3d 476, 480 (D.C. Cir. 2016) (affirming grant of motion to dismiss where plaintiff failed to file a timely response, but holding that the district court erred in dismissing complaint *with* prejudice). Before granting any motion to dismiss a pro se

complaint, the district court must explain to the plaintiff the consequences of failing to respond to the motion. *See Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam) (requiring a district court to inform a pro se party that "failure to respond . . . may result in the district court granting the motion and dismissing the case").

**B.      Summary Judgment In FOIA Cases**

Many of the agency defendants in the instant case seek summary judgment with respect to MacLeod's contention that they have violated the FOIA for various reasons, as noted above. "FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008); therefore summary judgment for an agency is appropriate only after the agency proves that it has "fully discharged its

[FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). With respect to evaluating an agency's fulfillment of its FOIA obligations, the overarching question is whether the defendant agency is improperly withholding requested records over which the agency has possession or control. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

Under the FOIA, the specified scope of an agency's statutory duties to produce records is important: as relevant here, the statute requires agencies to "make [] records promptly available to any person" who submits "any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A). If an agency's affidavits—which are entitled to a presumption of good faith, *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 55 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015)—demonstrate that the prerequisites for triggering the agency's duties to search and produce responsive records have not been satisfied, the agency is entitled to summary judgment. *See Dale v. IRS.*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a *valid* request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." (emphasis added)); *see also, e.g.*, *Schoenman v. FBI*, No. 04-cv-2202, 2006 WL 1126813, at *13 (D.D.C. Mar. 31, 2006) (dismissing FOIA claim where plaintiff submitted no proof that agency received request, and where agency submitted affidavit stating it had not received request).

Furthermore, and notably, insofar as the FOIA statute indicates that a request need only be honored pursuant to an agency's published rules for the submission and

processing of FOIA requests, it is well established that a requester's "failure to comply with [such] FOIA regulations is the equivalent of a failure to exhaust[.]" *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (citations omitted); *see also Church of Scientology v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986). And in this jurisdiction, "[e]xhaustion of administrative remedies is generally required before seeking judicial review" under the FOIA. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam); *see also id.* (explaining that the exhaustion requirement permits the agency to have "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision" (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)); *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (observing that, if a requester has not exhausted his administrative remedies prior to the filing of a FOIA action in district court, his claim is subject to dismissal).[8]

Finally, it is important to note for present purposes that, in this jurisdiction, there appears to be a distinction between the treatment of unopposed motions to dismiss, on the one hand, and the handling of unopposed motions for summary judgment, on the other. If a plaintiff has the requisite notice, an unopposed motion to dismiss may be deemed conceded, and the complaint dismissed on that basis alone. *See* LCvR 7(b); *Cohen*, 819 F.3d at 480 (affirming that LCvR 7(b) vests district courts with discretion

---

[8]  It appears that failure to exhaust administrative remedies may be grounds for *either* dismissal of the complaint *or* summary judgment in FOIA cases. If a plaintiff's complaint contains all of the information that is necessary to determine if exhaustion occurred, "[a] FOIA plaintiff's failure to exhaust administrative remedies before filing a civil action is properly treated as a failure to state a claim upon which relief may be granted" under Fed. R. Civ. P. 12(b)(6), and thus dismissal of the action is appropriate. *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 18 (D.D.C. 2010) (citing *Hidalgo*, 344 F.3d at 1260). But when the court is called upon to address the exhaustion issue by considering matters outside of the pleadings—e.g., by reviewing the content of agency declarations—it must treat a defendant's motion as one for summary judgment. *See id.* at 18–19; *see also* Fed. R. Civ. P. 12(d), 56.

to grant unopposed motions to dismiss as conceded); *Voacolo v. Fed. Nat'l Mortgage Ass'n*, 224 F. Supp. 3d 39, 43 (D.D.C. 2016) (granting unopposed motion to dismiss as conceded). But with respect to an unopposed motion for summary judgment, the D.C. Circuit has specifically held that a district court cannot grant summary judgment as conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). Rather, because "[t]he burden is always on the movant to demonstrate why summary judgment is warranted[,]" and "[t]he nonmoving party's failure to oppose summary judgment does not shift that burden[,]" the district court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* (internal quotation marks and citation omitted).

### C. Application Of The Governing Legal Standards To Pro Se Parties

Finally, this Court must be mindful of the fact that MacLeod is proceeding in this matter pro se when it evaluates the pending motion to dismiss/motion for summary judgment. It is well established that the pleadings of pro se parties are to be "liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, it is also quite clear "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

Thus, even though a pro se complaint "must be construed liberally, the complaint must still present a claim on which the Court can grant relief." *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (internal quotation marks and

citation omitted); *see also Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "[e]ven a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the complaint" (internal quotation marks and citation omitted)); *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (noting that a pro se complaint must state a claim upon which relief can be granted). Likewise, when faced with a motion for summary judgment, a pro se plaintiff, just like a represented party, must comply with a court's rules regarding responses to statements of material fact and the need to identify record evidence that establishes each element of his claim for relief. *See Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("Because Grimes is the plaintiff and so bears the burden of proof of her claims, it is well established that she cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence.").

## III. ANALYSIS

As explained above, MacLeod's submission in opposition to the pending motion to dismiss/motion for summary judgment offers no substantive response whatsoever to any of the points or arguments that Defendants make. (*See* Sec. I.B, *supra*.) Because MacLeod's filing neither addresses the legal issues that his claims present nor responds in any way to the declarations that the defendant agencies have submitted, this Court will address the pending motion as follows. First, as explained below, the Court finds that MacLeod has conceded to the dismissal of the APA claim against CBP arising from that agency's denial of MacLeod's NEXUS applications, and as a result, Defendants' motion to dismiss will be **GRANTED** as conceded, and that claim will be dismissed without prejudice.

The Court has also accepted as true the unrebutted facts contained in the other agency defendants' declarations regarding both their receipt (or non-receipt) of MacLeod's FOIA requests and their responses to those requests, *see Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (where a responding party does not file a statement of material facts in dispute, "the district court is to deem as admitted the moving party's facts"), and consistent with D.C. Circuit precedent, this Court has proceeded to review the agencies' facts and evidence to determine whether summary judgment in favor of the agency defendants is warranted despite the lack of a coherent opposition from the plaintiff. For the reasons explained fully below, this Court concludes that the agencies' evidence demonstrates either (1) that the agency in question is not improperly withholding requested records that it has in its possession, or (2) that MacLeod has failed to exhaust his administrative remedies with respect to the agency's response to his FOIA request. Therefore, Defendants' motion for summary judgment in favor of CIA, NSA, GSA, and DHS with respect to the complaint's FOIA claims will be **GRANTED** as well.

### A.    Plaintiff Has Conceded Defendants' Motion To Dismiss The APA Claim

In response to the complaint's purported claim that CBP improperly denied MacLeod's applications for the NEXUS Trusted Traveler program, CBP has made two arguments:  first, that MacLeod failed to state a claim against CBP under the APA because decisions regarding NEXUS applications are committed by law to CBP's discretion (*see* Defs.' Mem. at 42–47), and second, that even if this decision is reviewable, CBP did not act arbitrarily or capriciously in denying MacLeod's application in light of his admitted criminal history and the agency's published criteria

that establish that individuals with criminal convictions are not eligible for the NEXUS program (*id.* at 47–49). MacLeod's submission in response to these arguments is a rambling and incoherent listing of contentions that appear to relate generally to the circumstances underlying his criminal conviction and the general criteria for admission into the United States. (*See* Pl.'s Opp'n at 5–9.)

For example, MacLeod makes a series of contentions about his own mental health (*see id.* at 5 ("Mental Health is stable, and since suicide is towards oneself, it does not harm the security of the United States of America[.]")), and also maintains his "right to freedom of movement, and entry" pursuant to "Canadian and US Charters (Constitutions)" (*id.* at 6). One gleans from MacLeod's contentions that he perceives himself to be an "'immigrant with permission to' return" under "the British Nationality Act and the Immigration and Refugee Protection Act" (*id.* at 8), and that he believes that his criminal record should have been "purged" when he turned 18 (*id.* at 6). But these assertions are completely untethered from any legal argument regarding the propriety of CBP's denial of his NEXUS applications. Rather, MacLeod maintains generally that "other incidences with the Customs and Border Protection in relation with the vulnerable or one-time offenders being denied access [are] common," and that "the reason" for CBP's response to his application is "'paranoia'" (*id.* at 9; *see also id.* (arguing that "[t]he United States of America has incorporated laws that have bec[o]me restrictive due to 9/11 and that these laws placed restrict[ions on] travel. Surely, restriction are necessary, but they should not be causing international constitutional conflicts, causing a person whom is only harmful to their selves [sic] and not others entry, or causing 'border distress'"); *id.* at 1 ("The plaintiff furthermore claims that the

United States Foreign Policy is now also Canada's Foreign Policy due to agreements in the [NEXUS program].  As a result of the co-operations within governments including handover of prisoners, joint nation prosecutions, etc., the United States Government should not be permitted to restrict or deny access to information requested.").)

MacLeod also proffers what appear to be various explanations for requesting a NEXUS card and the records that he seeks from the defendant agencies.  (*See, e.g.*, Pl.'s Notice at 3 ("The plaintiff requires those records to re-open Project Spade."); *id.* at 5 (noting that he wants certain documents because he "holds interest as a criminological topic [in the Cold War and the annexation of the Crimean Peninsula, Ukraine] and may be able to assist in the repatriation of the Crimean Peninsula with Ukraine and advise authorities further in international efforts").)  What MacLeod does *not* do is acknowledge that Defendants have filed a motion to dismiss his complaint, much less attempt to respond to any of the CBP's arguments for dismissal in any meaningful sense.

When evaluating a defendant's dispositive motion, "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss."  *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002).  Indeed, as noted, under its Local Rules, this Court has the discretion to treat a motion that is unopposed as conceded, *see* LCvR 7(b), and courts in this district regularly exercise this discretion both in circumstances where no response is filed, *see, e.g.*, *Washington*, 2017 WL 1232400, at * 1 (granting as conceded motion to dismiss where plaintiff failed to respond and thereby conceded motion), and in situations in which the plaintiff's response does not specifically address the individual

arguments that the defendant makes, *see, e.g., Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C.) ("In the District of Columbia Circuit, it is established that an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012). It is also clear that application of Local Civil Rule 7(b) to deem a motion conceded may be warranted if the plaintiff's response is incoherently "filled with irrelevant legal principles and citations" and "does not address the substance of defendants' arguments as to why plaintiff's claims [] should be dismissed[.]" *Cummings ex rel. J.C. v. Woodson Senior High Sch.*, 563 F. Supp. 2d 256, 259 (D.D.C. 2008); *see also Howard v. Locke*, 729 F. Supp. 2d 85, 87–88 (D.D.C. 2010) (finding that a plaintiff's opposition to a defendant's motion cannot properly be deemed "a *response* to defendant's motion" where plaintiff "fails to contest or otherwise address the legal authority cited by defendant" (emphasis in original)).

So it is here. Although MacLeod's opposition to the motion touches upon the subject matter of the claims he has brought in this lawsuit, MacLeod has offered no substantive response to any of CBP's legal arguments regarding why the claims against that agency must be dismissed. As a result, this Court will treat CBP arguments for dismissal of the complaint's claims regarding that agency's denial of MacLeod's NEXUS applications as conceded under Local Civil Rule 7(b). *See Howard*, 729 F. Supp. 2d at 87–88. Furthermore, in accordance with D.C. Circuit case law, the Court

will note specifically that the dismissal of this aspect of MacLeod's complaint is without prejudice.  *Cf. Cohen*, 819 F.3d at 484.[9]

## B.  The Various Agency Defendants Are Entitled To Summary Judgment With Respect To MacLeod's FOIA Claims

MacLeod's FOIA claims against CIA, NSA, GSA, and DHS fare no better. Under the circumstances presented here, the Court's analysis of Defendants' summary judgment motion must begin with acceptance of the facts as Defendants state them.  *See* Fed. R. Civ. P. 56(e)(2) (authorizing court, when non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c)," to "consider the fact undisputed for purposes of the motion"); *Grimes*, 794 F.3d at 94 (noting that a plaintiff has the "burden to identify evidence that a reasonable jury could credit in support of each essential element of [his] claims" and "cannot rely on the allegations of [his] own complaint in response to a summary judgment motion, but must substantiate them with evidence"); LCvR 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  And with the Defendants' version of the facts (*see* Defs.' Statement of Material Facts to Which There is No Genuine Dispute, ECF No. 8-1) established, it is clear to this Court for the reasons that follow

---

[9]  To be clear, this Court is dismissing MacLeod's NEXUS-related claim without reaching the merits of CBP's legal arguments.  For what it's worth, however, it appears that even a coherent opposition to CBP's dismissal arguments would be difficult to sustain.  Assuming *arguendo* and in light of the D.C. Circuit's opinion in *Watervale Marine Co. v. U.S. Department of Homeland Security*, 807 F.3d 325, 330 (D.C. Cir. 2015), that MacLeod could overcome the agency's 'committed to agency discretion by law' analysis, CBP has made a persuasive argument that its denial of MacLeod's application was neither arbitrary nor capricious given the agency's established policies and his criminal history.  (*See* Global Enrollment Sys. Application, Ex. 5 to Defs.' Mem., ECF No. 8-2 at 57.)  Therefore, CBP's merits contention that MacLeod has failed to make a plausible APA claim is a strong one.

that each of the agency defendants has met its burden of demonstrating that summary judgment should be granted in its favor with respect to MacLeod's FOIA claims.

1. <u>Neither NSA Nor GSA Received A FOIA Request From MacLeod</u>

MacLeod asserts in his complaint that he "requested personal information" from NSA but did not receive any response, and that he likewise "requested information from [GSA] and received a response claiming they do not have the information requested." (Compl. ¶¶ 5–6.) In response to these allegations, both NSA and GSA have submitted separate declarations in which each affiant explains that the agency never received any FOIA request from MacLeod.

Specifically, NSA has submitted a declaration from John R. Chapman, who states that NSA's FOIA/Privacy Act Office is the only office "charged with receiving and processing requests for documents or information from the public[,]" and that two separate searches of the records system "in which all valid FOIA . . . requests . . . are logged" did not reveal any FOIA request that MacLeod had submitted to the NSA. (*See* Decl. of John R. Chapman, Ex. 2 to Defs.' Mot., ECF No. 8-2 at 6–8, ¶¶ 4–5; *see also id.* ¶ 4 ("If a valid FOIA request has been filed with NSA, a record of that request would be maintained in the document management system and would be searchable by name of requester, date of request, topic of request, or other identifiers.").) Similarly, GSA's declarant, Travis S. Lewis, says that he twice searched GSA's "FOIAonline" system, which is a database that houses all FOIA requests submitted to GSA, and did not find any request from MacLeod. (*See* Decl. of Travis S. Lewis, Ex. 1 to Defs.' Mot., ECF No. 8-2 at 2-4, ¶¶ 2, 4; *see also id.* ¶ 2 ("[I]f a FOIA request has been filed with the GSA, a record of that filing would be maintained in the database . . . known as

the FOIAonline[, which] is searchable by name of requester, date of request, phone number, email, requester's organization and topic of request.").)  MacLeod has not provided any evidence that even pertains to these agency's representations, much less rebuts them.

Thus, this Court deems the unrebutted representations that neither NSA nor GSA ever received any FOIA request from MacLeod to be true for the purpose of the instant motion, and it reiterates that a necessary prerequisite to any FOIA claim is the submission of a request to the agency that complies with the relevant procedural requirements.  *See* 5 U.S.C. § 552(a)(3)(A).  "If no FOIA request is received, an agency has no reason to search or produce records and similarly has no basis to respond." *Carbe v. Bureau of Alcohol, Tobacco & Firearms*, No. 03-cv-1658, 2004 WL 2051359, at *8 (D.D.C. Aug. 12, 2004).  The conceded facts in the declarations that NSA and GSA have submitted establish that neither agency received a FOIA request from MacLeod; consequently, the Court finds that NSA and GSA are not improperly withholding records from MacLeod under the FOIA, and are therefore entitled to summary judgment.  *See Thomas v. FCC*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008) (granting summary judgment in the agency's favor "[i]n the absence of any evidence that plaintiff submitted a proper FOIA request to which defendant would have been obligated to respond").

2.      DHS Does Not Maintain The Records That MacLeod
         Requested

As explained above, a plaintiff can prevail in a FOIA case only if he has demonstrated "that an agency has (1) improperly (2) withheld (3) agency records." *Judicial Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 454 (D.D.C. 2016); *see also*

*Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 152 (1980) (noting that the FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained"). Here, while DHS acknowledges that MacLeod sent the agency a letter in which he claimed to be "within the Canadian Government as an MP of Parliament" and sought information about obtaining "a Diplomatic Status card," the declarant whose testimony DHS has provided explains that no DHS component maintains information pertaining to visas for diplomats or government officials from foreign countries or any other records potentially responsive to MacLeod's FOIA request. (*See* Tyrrell Decl. ¶¶ 8, 10, 13.)

It is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain, and that "[w]here the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." *Reyes v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014) (alterations, internal quotation marks, and citation omitted); *see also Earle v. U.S. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (granting summary judgment to agency on FOIA claim where the declarant explained that the agency did not maintain records sought, such that a search for those records would be futile); *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (same). Having made the unrebutted representation that it does not maintain the records that MacLeod requested, DHS is likewise entitled to summary judgment on MacLeod's FOIA claim.

3.  <u>MacLeod Did Not Exhaust His Administrative Remedies With Respect To The CIA's Response To His FOIA Request</u>

Unlike the other defendant agencies, the CIA made a substantive response to MacLeod's FOIA request by sending him a letter that addressed two different aspects of his request.  (*See* Sec. I.A.2.b, *supra*.)  As explained, with respect to MacLeod's request for records regarding himself, the CIA issued a *Glomar* response, refusing to admit or deny that it maintained any responsive records (*see* CIA Response Letter at 52; *see also* Shiner Decl. ¶¶ 7, 16), and in regard to the remaining broad categories of requested records dating back to 1973 or earlier, the CIA notified MacLeod that it had declined to process the requests on the grounds that they were not reasonably specific and thus would require the agency to conduct an unreasonably burdensome search.  (CIA Response Letter at 53; *see also* Shiner Decl. ¶ 7 n.4.)  Significantly for present purposes, in its response letter to MacLeod, the CIA specifically informed MacLeod of his right "to appeal [the *Glomar*] response to the Agency Release Panel[.]"  (CIA Response Letter at 53.)  *See also* 32 C.F.R. § 1900.42(a) (establishing that a FOIA requester has the right to appeal administratively "whenever access to any requested record or any portion thereof is denied" by the CIA).  However, according to the agency's declarant, MacLeod did not avail himself of this appeal opportunity.  (*See* Shiner Decl. ¶ 8.)

Defendants argue that MacLeod's failure to seek an administrative appeal of the CIA's Glomar response forecloses his ability to challenge the decision in this Court, and this Court agrees.  It is the law in this circuit that "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a

factual record to support its decision." *Hidalgo*, 344 F.3d at 1258 (internal quotation marks and citation omitted). Although exhaustion is not jurisdictional in the FOIA context, *see id.*, the D.C. Circuit has long held that exhaustion of an agency's FOIA appeal procedures is a condition precedent to initiating FOIA litigation as a jurisprudential matter. *See Oglesby*, 920 F.2d at 61–62 ("Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts."); *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). In light of this clear command from the D.C. Circuit, courts in this district regularly find that a FOIA lawsuit cannot proceed if the agency has made a determination regarding the plaintiff's FOIA request but the plaintiff failed to appeal the agency's response through proper administrative channels. *See, e.g.*, *Freedom Watch, Inc. v. NSA*, 134 F. Supp. 3d 437, 439 (D.D.C. 2015) (dismissing FOIA claim where plaintiff admitted it had not appealed agency's response to its FOIA request and thereby had not exhausted its administrative remedies); *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 227–28 (D.D.C. 2012) (same); *Citizens For Responsibility & Ethics in Wash. v. Dep't of the Interior*, 503 F. Supp. 2d 88, 101 (D.D.C. 2007) (granting agency's motion for judgment on the pleadings where the plaintiff had filed late appeals, or no appeals at all, with respect to various FOIA requests).

The circumstances here demand the same result. That is, in contrast to a case in which constructive exhaustion is inferred from the agency's failure to respond timely to a plaintiff's FOIA request, *see* 5 U.S.C. 552(a)(6)(C)(i), the CIA issued a *Glomar* response to MacLeod's request for information about himself, and informed MacLeod

of his right to appeal that response (*see* CIA Response Letter at 52–53). Yet, rather than exercising his right to appeal, MacLeod filed the instant lawsuit. In accordance with established precedent, MacLeod's failure to avail himself of an administrative appeal clearly forecloses his ability to challenge the CIA's *Glomar* response in this lawsuit. *See, e.g.*, *Freedom Watch, Inc. v. NSA*, 134 F. Supp. 3d at 439; *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d at 227–28; *Citizens For Responsibility & Ethics in Wash.*, 503 F. Supp. 2d at 101.

The CIA's argument regarding MacLeod's unfulfilled request for a wide swath of CIA documents concerning such matters as "the Cold War," and "CIA and NSA involvement with Russia" requires a different analysis, because the agency maintains that MacLeod's FOIA claim is irretrievably unexhausted based on the lack of specificity in MacLeod's document request. (*See* Defs.' Mem. at 26–31.) The agency is right to assert that a plaintiff who has not presented a reasonably specific request for documents, in violation of that agency's own FOIA regulations, can also be conceived of as having failed to exhaust available administrative remedies prior to bringing suit. *See Latham v. U.S. Dep't of Justice*, 658 F. Supp. 2d 155, 161–62 (D.D.C. 2009) (awarding summary judgment to agency based on plaintiff's failure to exhaust administrative remedies where his "FOIA request does not reasonably describe the records sought and, therefore, is not a proper FOIA request"); *Keys v. Dep't of Homeland Sec.*, No. 08-cv-0726, 2009 WL 614755, at *4 (D.D.C. Mar. 10, 2009) ("A FOIA requester may be deemed to have failed to exhaust administrative remedies when the requester has . . . failed to reasonably describe the records being sought[.]") (citing

*Gillin v. IRS*, 980 F.2d 819, 822–23 (1st Cir. 1992)).  And that appears to be exactly what has happened here.

Specifically, the CIA's regulations require requesters to "reasonably describe the records of interest[,]" 32 C.F.R. § 1900.12(a), and a reasonable description of a record is one that is contains "a description of a document (record) by unique identification number or descriptive terms which permit an Agency employee to locate documents with reasonable effort given existing indices and finding aids[,]" *id.* § 1900.02(m); *see also Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (when evaluating the reasonableness of a FOIA request, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested" (internal quotation marks and citation omitted)).  It is clear on the face of MacLeod's letter that the categories of records he seeks are not at all specific, and the records sought are far from reasonably described.  (*See, e.g.*, CIA FOIA Request (requesting, among other things, any information relating to "the Cold War," "Vladimir Putin dating back to the KGB," and "[a]ny or all flight records from 1973 to current from CYYG, LGA, JFK, and LAX whereas Lufthansa Flights were involved in international abduction").) Courts in this district readily find similar requests for "any" and "all" records that relate to some general topic to be overly-broad and invalid.  *See, e.g.*, *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014) (FOIA request for "all records that pertain[ ] in whole or in part" to a list of closed investigations and reports was insufficiently descriptive and did not require a response); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 57 (D.D.C. 2013) (FOIA request seeking, *inter alia*, "[a]ny and all enumerated documents and things which discuss Iran in the context of American politics and/or

elections from 1992 to the present" failed to reasonably describe the records sought and was void *ab initio*); *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 26 (D.D.C. 2000) (request for "all records pertaining to contacts between [two individuals] and companies, entities, and/or persons related or doing or conducting business in any way with the People's Republic of China" did not reasonably describe records sought (internal quotation marks omitted)).

Therefore, this Court agrees with the CIA that MacLeod failed to exhaust administrative remedies insofar as, with respect to the bulk of his records request, the documents he purports to seek are not reasonably described, such that a response would be overly burdensome to the agency. *See Latham*, 658 F. Supp. 2d at 161–62; *Keys*, 2009 WL 614755, at *4.

## IV.    CONCLUSION

Because MacLeod has conceded CBP's motion to dismiss his APA claims, and has failed to exhaust his administrative remedies with respect the FOIA claims he has brought against CIA, NSA and GSA, and DHS, his claims cannot proceed. Accordingly, as stated in the accompanying Order, Defendants' combined motion to dismiss and for summary judgment will be **GRANTED**.

DATE:  September 21, 2017        *Ketanji Brown Jackson*
                                KETANJI BROWN JACKSON
                                United States District Judge